United States Court of Appeals
Fifth Circuit

**F I L E D**

July 21, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-20223
_____


RICHMOND PRINTING LLC

                              Plaintiff - Appellant

     v.

DIRECTOR FEDERAL EMERGENCY MANAGEMENT AGENCY; Et Al

                              Defendant


RGA INC, also known as Ray Graf Inc, also known as Ray Graf
Adjustment Inc; RAYMOND E GRAF INC, also known as RGA INC,
also known as Ray Graf Inc, also known as Ray Graf
Adjustment Inc; RAYMOND MEYER

                              Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Texas
(H-00-CV-2667)
_____

Before KING, Chief Judge, and REAVLEY and STEWART, Circuit
Judges.

KING, Chief Judge:[*]

---

[*]     Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

Plaintiff-Appellant Richmond Printing, Inc. brought claims for negligent and fraudulent misrepresentation, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act against Defendants-Appellants Raymond E. Graf, RGA Inc., and Raymond Meyer arising out of Richmond's attempts to file a claim pursuant to its flood insurance policy. For the following reasons, we affirm the district court's judgment.

I.   FACTS AND PROCEDURAL BACKGROUND

On September 11, 1998, Plaintiff-Appellant Richmond Printing, Inc. ("Richmond"), a Texas company, suffered flood damage as a result of Tropical Storm Francis. Richmond was covered by a standard flood insurance policy ("SFIP") issued by the Federal Emergency Management Agency ("FEMA") pursuant to the National Flood Insurance Program ("NFIP"). After the flood, Richmond filed a claim with FEMA based on that policy. FEMA assigned a private insurance adjuster, Defendant Raymond E. Graf ("RGA"), to handle Richmond's claim. RGA, in turn, subcontracted some of the adjusting work to Catastrophe Claims Adjustors, Inc., whose president was Defendant Raymond E. Meyer. Richmond's SFIP contains the following clause concerning the responsibilities of a private claims adjuster assigned by FEMA:

> The insurance adjuster whom the Insurer hires to investigate the claim may furnish the Insured with a proof of loss form, and she or he may help the Insured complete it. However, this is a matter of courtesy only, and the Insured must still send the Insurer a proof of loss within 60 days after loss even if the adjuster does not furnish the form or help the insured complete it. In

2

completing the proof of loss, the insured must use its own judgment concerning the amount of loss and the justification for the amount.

On November 9, 1998, Richmond submitted a $35,331.60 preliminary proof of loss to FEMA, which was paid. Shortly thereafter, Richmond submitted a detailed and itemized statement of the total losses which stated additional flood damages of $359,485. On March 19, 1999, while the larger claim with FEMA was still pending, Richmond's facilities flooded again. At the time of the second flood, Richmond was still covered by the same SFIP. Richmond filed a damages claim with FEMA stemming from the March 1999 flood in the amount of $135,950.

In August 1999, FEMA advised Richmond that it was denying Richmond's claims arising out of the March 1999 flood because Richmond had failed to submit the proper form of proof of loss. FEMA later denied Richmond's pending claim from the September 1998 flood for the same reason.

On August 2, 2000, Richmond filed suit in federal district court against the director of FEMA and RGA. Sometime thereafter, Richmond settled its claims against FEMA for $50,000. Richmond then amended its complaint to add Meyer as a defendant. In its amended complaint, Richmond alleged that RGA and Meyer had made material misrepresentations concerning what information Richmond needed to provide to FEMA, as well as when and in what form the information had to be provided, in order to satisfy the proof of loss requirements of the SFIP. Richmond also alleged that it

3

submitted information to RGA and Meyer that they never forwarded to FEMA.  Richmond brought claims against RGA and Meyer for negligent and fraudulent misrepresentation, violations of the Texas Insurance Code[1], and violations of the Texas Deceptive Trade Practices Act.[2]

RGA filed a motion for summary judgment, which the district court granted.  The district court found that, whether or not Richmond actually had a copy of its SFIP, Richmond was presumed to know the contents of the policy.  The court reasoned that, because the SFIP had been published in the Code of Federal Regulations ("CFR"), Richmond was expected to know the terms of his SFIP and any reliance on statements made by the adjusters was unreasonable so far as those statements contradicted the terms of

---

[1]    TEX. INS. CODE. ANN. art. 21 §§ 4(10)-(11) (Vernon 1981 & Supp. 2002) include within the statutory definition of unfair and deceptive acts or practices in the business of insurance "unfair settlement practices" and "misrepresentation of an insurance policy" (providing multiple specific acts constituting each).

[2]    TEX. BUS. & COM. CODE ANN. § 17.50(a) (Vernon 2002):

(a)  A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

. . .

(3)  any unconscionable action or course of action by any person; or

(4)  the use or employment by any person of an act or practice in violation of Article 21.21, Insurance Code.

4

the policy. The district court also found that RGA owed no duty to Richmond because, under the terms of the SFIP, the adjuster has no duty to assist the insured; instead, the policy states only that the adjuster "may" assist the insured and that the adjuster is provided only as a matter of "courtesy."

Meyer then filed his own motion for summary judgment, raising the same lack of duty and unreasonable reliance grounds that RGA had raised. The district court also granted Meyer's motion for summary judgment, relying on the same grounds that it did when considering RGA's motion for summary judgment. However, the court also somewhat ambiguously discussed whether federal law preempted Richmond's state law claims.[3]

Richmond appeals the district court's grants of summary judgment in favor of both RGA and Meyer, arguing that the district court erred both in finding that the defendants owed him no duty as the adjusters assigned to handle his insurance claim and in finding that he unreasonably relied on statements made by RGA and Meyer that contradicted the terms of his SFIP. We review a grant of summary judgment de novo, viewing all questions of fact in the light most favorable to the nonmoving party. Horton

---

[3] The district court rejected Richmond's reliance on Davis v. Travelers Property & Casualty Co., 96 F.Supp.2d 995 (N.D. Cal. 2000), which had held that similar claims raised before that court were not preempted. However, the district court never actually stated that it believed Richmond's claims were preempted; instead, it based its order granting summary judgment on the lack of duty and unreasonable reliance grounds it had invoked when considering RGA's motion for summary judgment.

v. City of Houston, 179 F.3d 188, 191 (5th Cir. 1999). Summary judgment is appropriate only where no question of material fact remains and the moving party is entitled to judgment as a matter of law. Blow v. City of San Antonio, 236 F.3d 293, 296 (5th Cir. 2002).

II. PREEMPTION OF RICHMOND'S STATE LAW CLAIMS

Initially, Richmond asserts that the "ultimate basis" for the district court's ruling rested on the somewhat ambiguous discussion concerning whether Richmond's state statutory and common law claims were preempted by federal law. While we disagree that the district court's orders primarily rested on a finding that Richmond's claims were preempted, we will nevertheless consider Richmond's allegation.

Before addressing this question, we should note that FEMA has issued a new regulation that amends an insured's SFIP to include the following language:

IX. What Law Governs

This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968, as amended (42 U.S.C. 4001 et seq.), and Federal common law.

65 Fed. Reg. 60,758, 60,767 (2000). However, this regulation did not go into effect until December 31, 2000 — after Richmond had filed suit against RGA and Meyer. Thus, both parties agree that the regulation does not govern the outcome of this case. We reference the new rule, though, to emphasize that our preemption

6

decision in this case applies only to those claims which arose prior to the date the amended SFIP became effective.

In arguing that its claims are not preempted, Richmond relies heavily on our decision in Spence v. Omaha Indemnity Insurance Co., 996 F.2d 793 (5th Cir. 1993). In Spence, the insured had obtained an SFIP from a write-your-own ("WYO") insurance company.[4] Id. at 794 & n.1. After the insurer denied coverage based on policy language, the insured brought state law claims for, among other things, tortious misrepresentation in the procurement of the policy. Id. In holding that the plaintiff's misrepresentation claim could go forward under state law, we reasoned that whether a claim was preempted should depend upon whether the claim arose out of the terms of the contract (the SFIP) or whether the claim was extracontractual. For contractual claims, we noted that the "national policies underlying the NFIP and extensive federal role therein impel our conclusion that federal common law governs claims under flood insurance policies." Id. at 796. However, we also found that FEMA accords "substantial autonomy" to its private insurers in the areas of "SFIP marketing and claims adjustment" and that, as a result, the federal interests in these claims were more attenuated. Id. Because the misrepresentation claim was an extracontractual

_____

4   Under the terms of the NFIP, an insured may obtain its SFIP either from FEMA directly or from a private WYO insurer which has contracted with FEMA to issue SFIPs.

claim, not a contractual claim under the SFIP, we concluded that the claim was not preempted.

RGA and Meyer argue that Richmond's reliance on Spence is misplaced because there are material differences between claims arising from misrepresentation in the procurement of an SFIP (as was the case in Spence) and claims arising from misrepresentation in the adjustment of a claim under an SFIP (as is the case here). The defendants cite several cases from other courts which have limited Spence to fraud in the procurement process, holding that claims for fraud in the adjustment process are preempted. See Messa v. Omaha Property & Cas. Ins. Co., 122 F.Supp.2d 513, 521 (D.N.J. 2000) ("Policy procurement is an entirely different creature than claims handling."); see also Neill v. State Farm Fire & Cas. Co., 159 F.Supp.2d 770, 775-78 (E.D. Pa. 2000); Jamal v. Travelers Lloyds of Tex. Ins. Co. et al., 129 F.Supp.2d 1024, 1029-31 (S.D. Tex. 2001); but see Davis, 96 F.Supp.2d at 1003-04 (citing Spence for the proposition that the NFIP does not preempt state-law extracontractual tort claims arising out of the adjustment process).

The defendants also cite a Fifth Circuit case, West v. Harris, 573 F.2d 873 (5th Cir. 1978), decided prior to Spence as evidence that Spence should be limited to claims arising out of policy procurement. In West, we held that a plaintiff's state law claims for attorney's fees and penalties arising out of an insurer's arbitrary refusal to pay a flood insurance claim were

8

preempted by federal law. Id. at 881. Because nothing in Spence purported to overrule West, the defendants argue that the only way to reconcile the two cases is to find that extracontractual claims (such as claims for attorney's fees, state law statutory penalties, and misrepresentation) are preempted by federal law except where those claims arise in the procurement process. See also Messa, 122 F.Supp.2d at 521 (making the same argument).

After carefully considering these arguments, we conclude that Richmond's state law claims are not preempted. We find little reason to draw the distinction desired by the defendants between extracontractual claims arising out of policy procurement and extracontractual claims arising out of claims adjustment. We clearly stated in Spence that, under the NFIP, private insurers had substantial autonomy in both policy procurement and claims adjustment. Spence, 996 F.2d at 796. Additionally, the terms of the SFIP prevent a private insurer from obtaining federal funds to cover the adjuster's liability for fraud. 42 U.S.C. § 4081(c) (1994) ("The Director of the Federal Emergency Management Agency may not hold harmless or indemnify an agent or broker for his or her error or omission."). Thus, as we noted in Spence, the federal interests in seeing federal law applied to such claims are much lower than they are where the claim arises out of coverage of the policy; claims on the policy are paid out of the federal treasury. Spence, 996 F.2d at 796.

9

Further, the defendants misinterpret the relationship between West and Spence.  While the claims for attorney's fees and penalties asserted in West were technically extracontractual, they were claims against the insurer ultimately based on the insurer's decision to deny coverage of a claim.  Thus, the crux of the case in West arose out of a claim on the contract, not an extracontractual claim related to the procurement of the contract or the adjustment of the claims.  West, therefore, can simply be read to mean that state law claims arising out of the terms of coverage of the SFIP are preempted, whether the claims are merely claims for coverage or ancillary claims arising out of the insurer's denial of coverage.  Nothing in Spence contradicts this holding.  See Spence, 996 F.2d at 795 (finding that federal law rather than state law applied to insured's breach of contract claim).

In short, Fifth Circuit precedent clearly demonstrates that Richmond's tortious misrepresentation claims against RGA and Meyer are not preempted.  We thus must examine whether the district court properly granted summary judgment in favor of the defendants on those claims.  As we will see, to say that Richmond's claims are governed by state law does not mean that the policy does not play an important part in their resolution.

III. THE ADJUSTERS' ROLES AND RESPONSIBILITIES UNDER THE SFIP

The district court grounded its decisions to grant summary judgment on two separate but related conclusions: (1) RGA and

10

Meyer, as private adjusters supplied by FEMA under the terms of the SFIP, owed no duty to Richmond; and (2) Richmond's reliance on the alleged misstatements by RGA and Meyer was unreasonable. Because reasonable reliance is an element of all of Richmond's state law claims and Richmond's reliance on any statements made by RGA and Meyer that contradicted the terms of the SFIP was unreasonable as a matter of law, we affirm the district court's grants of summary judgment.[5]

A recent Eighth Circuit decision dealt with these issues. Kerr v. FEMA, 113 F.3d 884 (8th Cir. 1997). In Kerr, the insured brought a claim under Missouri law against a private adjuster provided by FEMA alleging negligence in handling the proof of loss forms. Id. at 885. The insured argued that the adjuster owed it a duty and that it breached that duty by failing to complete the proof of loss forms properly. Id. The court stated that, even assuming that a duty existed between the adjuster and the insured, the insured's reliance on the representations made by the adjuster was not reasonable. Id. at 886-87. The court specifically cited to the provision of the SFIP which states that the adjuster "may" furnish the proof of loss form but that an

_____

[5] Richmond strenuously argues that the duty question is irrelevant here because none of the statutory or common law claims it raises require Richmond to demonstrate that RGA and Meyer owed it a duty. However correct this argument may be, because we hold that Richmond unreasonably relied on the adjusters' statements, we do not need to reach the merits of whether the adjusters owed a duty to Richmond.

11

adjuster was provided only as a "matter of courtesy." Id. at 887. The court concluded that the insured knew that it was his own responsibility to complete and submit the proof of loss forms because that was clearly stated in the provisions of his insurance policy. Id. Because of this, any reliance on statements made by the adjuster that contradicted the terms of the SFIP was unreasonable as a matter of law; the insured had a duty to read the policy and acted unreasonably in relying on adjusters provided only as a "courtesy" to complete a task which was the insured's own responsibility.

We find Kerr to be persuasive in this case. The SFIP clearly states that the adjusters are provided only as a courtesy and that the ultimate responsibility for correctly completing and submitting the proof of loss forms falls entirely on the insured. If RGA and Meyer did make material misstatements that contradicted the proof of loss provisions of the SFIP, Richmond acted unreasonably as a matter of law in relying on those statements.

Richmond contends that the Kerr reasoning on this issue is inapplicable in Texas because, under Texas law, an insured can rebut the presumption that he knows the terms of his insurance policy by demonstrating that he never received a copy of the policy or never read what he did receive. We find two flaws with this argument.

12

First, Richmond was insured by the federal government through the NFIP.  As the Supreme Court has stated, "those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to the law." Heckler v. Community Health Servs., 467 U.S. 51, 63 (1984). Thus, the special nature of the insurance relationship in this case charges the insured with the duty of understanding the terms of the SFIP so that he may deal appropriately with the government and its appointed agents.

Second, while Richmond contends that it never received a copy of the policy, the SFIP is published in its entirety in the CFR.  Unlike a typical automobile or health insurance policy, therefore, the insured has an additional outlet to which to turn to obtain information about the terms of the policy.  In a similar situation where the federal government oversaw a wheat crop insurance program, the Supreme Court held that the fact that the Wheat Crop Insurance Regulations were published in the Federal Register made them "binding on all who come within the Federal Crop Insurance Act, regardless of actual knowledge of what is in the regulations or of the hardship resulting from innocent ignorance."  Fed. Crop Ins. Corp. v. Merrill, 332 U.S. 380, 385 (1947); see also Flick v. Liberty Mut. Fire Ins. Co., 205 F.3d 386, 390 (9th Cir. 2000) (applying the Merrill rule in the context of the NFIP).

13

The unique situation presented by the NFIP creates additional responsibilities for the insured. One of those responsibilities is that, given that the insured is doing business with the government and that the terms of the SFIP are published in the CFR, the insured has a duty to read and understand the terms of its SFIP. Richmond here claims that, because it never received a copy of the SFIP, it had no way of knowing what the proof of loss submission requirements were and that, because RGA and Meyer were acting as government agents, Richmond reasonably relied upon their representations concerning the SFIP. Even if Richmond did not receive a copy of the SFIP, a copy was widely available and Richmond had a duty to familiarize itself with the terms of the policy. While RGA and Meyer may have made statements which contradicted the proof of loss terms of the SFIP, we agree with the Kerr court in holding that any reliance by Richmond on those statements was unreasonable as a matter of law.

Because Richmond's reliance upon representations by RGA and Meyer was unreasonable, the district court properly granted summary judgment in favor of RGA and Meyer on all of Richmond's common law and statutory claims.

IV.  CONCLUSION

We AFFIRM the judgments of the district court granting summary judgment in favor of RGA and Meyer. Costs shall be borne by the appellant.

14