United States Court of Appeals
Fifth Circuit

**F I L E D**

June 28, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

————————

No. 04-20493

————————

THOMAS WRIGHT, Dr,

                    Plaintiff-Appellee-Cross-Appellant,

versus

ALLSTATE INSURANCE COMPANY, ET AL,

                    Defendants

ALLSTATE INSURANCE COMPANY,

                    Defendant-Appellant-Cross-Appellee.

Appeals from the United States District Court
For the Southern District of Texas

Before GARWOOD, GARZA, and BENAVIDES, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

    This appeal stems from Allstate Insurance Company's ("Allstate") denial of Dr. Thomas

Wright's claim against his flood insurance policy, issued under the auspices of the National Flood

Insurance Act, 42 U.S.C. §§ 4001-4129 ("NFIA"). Allstate appeals the district court's application

of equitable estoppel and award of costs and attorney's fees. Wright cross-appeals the court's dismissal of his state law claims against Allstate and an Allstate employee, Guy Chapman, as well as its denial of his motion to amend his complaint. Both parties appeal the damages award.

I

Wright purchased a Standard Flood Insurance Policy ("SFIP") to cover his Houston home. While Wright purchased his SFIP from Allstate, the insurance was provided through the National Flood Insurance Program ("NFIP"), which is administered by the Federal Emergency Management Agency ("FEMA") under the NFIA. The terms of SFIP policies are dictated by FEMA. 44 C.F.R. §§ 61.4(b), 61.13(d). Payments on SFIP claims come ultimately from the federal treasury. *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998). Allstate is a fiscal agent of the United States and, in the parlance of the NFIP, a Write Your Own insurer ("WYO"). 42 U.S.C. §§ 4071(a)(1), 4081(a).

After Tropical Storm Allison struck Houston in 2001, Wright filed a claim on his SFIP. Allstate dispatched claims adjuster Jack Gardner, of Pilot Catastrophe Services, to inspect Wright's home. Gardner estimated the covered damage at $12,580.04. Wright hired his own certified public insurance adjuster whose agent, Pat Wolford, prepared an estimate of $233,497.59. Because Wolford's estimate included damage unrelated to Wright's flood claim, Wolford later revised her estimate to $125,840.23. Wright did not provide Allstate with a copy of Wolford's revised estimate, although Allstate was apparently aware a second estimate had been prepared.

Negotiations between Wright's adjuster and Allstate's representatives over the correct loss amount were unfruitful. Wright refused to sign a Proof of Loss form ("POL"), required under FEMA regulations, containing Gardner's damage estimate. Instead, Wright eventually submitted his own POL to Allstate, listing "to be determined" in the spaces for cost of repairs, depreciation, cash value,

2

and net amount claimed. Allstate responded with a letter, containing what purports to be employee Guy Chapman's signature,[1] stating "we are accepting this proof in compliance with the policy conditions concerning the filing of a Proof of Loss." It continued, "we expressly reserve all of our rights and defenses in connection with the ascertainment as to the value and loss, if any, and we do not in any way in acknowledging receipt of this Proof of Loss waive any of the rights and defenses [we possess]." Wright's adjuster subsequently sent three letters to Allstate expressing an interest in negotiating a resolution. Allstate's response, received after the FEMA-established deadline for filing a POL had passed, rejected Wright's claim on the grounds that Wright failed (1) to cooperate as required by the terms of the policy and (2) to file an adequate POL within the FEMA-prescribed time frame.

Wright filed suit against Allstate and Chapman, alleging breach of contract, violations of the Texas Insurance Code and Deceptive Trade Practices Act, breach of the common law duty of good faith and fair dealing, fraud, and negligent misrepresentation. The district court dismissed all but the breach of contract claim against Allstate, holding that the state law claims were preempted by federal law. It also dismissed Wright's claims against Chapman. With regard to the breach of contract claim, the court held Allstate equitably estopped from asserting Wright's alleged failure to file an adequate POL as a basis for denial of his claim. Finding that Wright's evidence failed to show that all of the claimed damages were caused by flooding, the court awarded Wright $24,029, costs, and attorney's fees. Both parties appeal.

---

[1] While the letter contained Chapman's purported signature, Wright concedes that Chapman was not actually involved in writing or signing the letter. Rather, the letter was written by a different Allstate employee authorized to sign Chapman's name to claims correspondence for purposes of providing a uniform contact person.

II

SFIP policies require that insureds asserting a claim file a POL within 60 days, subject to such extensions as FEMA may approve, listing "the actual cash value . . . of each damaged item of insured property . . . [,] the amount of damage sustained" and "the amount . . . claimed as due under the policy to cover the loss." 44 C.F.R. §§ 61.13(a), (d), (e) (1993); *see also Forman v. Fed. Emergency Mgmt. Agency*, 138 F.3d 543, 545 (5th Cir. 1998). Courts have enforced this requirement strictly, holding that failure to timely file a POL complying with the regulatory requirements is a valid basis for denying an insured's claim. *See, e.g., Neuser v. Hocker*, 246 F.3d 508, 510 (6th Cir. 2001) ("Our sister circuits have consistently held that FEMA's proof of loss requirement is to be strictly enforced."); *Gowland*, 143 F.3d 951. We have previously recognized that a POL lacking the requisite amounts claimed is insufficient to satisfy FEMA requirements. *See Forman*, 138 F.3d at 545.

The district court held, however, that Allstate was equitably estopped from claiming Wright's failure to file an adequate POL as a basis for denying his claim. Citing Allstate's letter "accepting this proof in compliance with the policy conditions concerning the filing of a Proof of Loss," the court found that Wright had proven the elements of equitable estoppel. On appeal, Allstate argues that (1) courts cannot apply equitable estoppel against a WYO on these facts and (2) Wright failed to establish the elements of equitable estoppel. We review the district court's application of equitable estoppel *de novo*. *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002).

We previously considered the application of equitable estoppel against a WYO in *Gowland*. 143 F.3d 951. There, the insureds, like Wright, argued that their WYO should be equitably estopped from asserting their failure to file a POL as a basis for denying their claim. *Id*. at 954. We declined

4

to so hold, stating that:

> Although the Gowland policy was written by Aetna, a private insurance company, payments made to that policy are a "direct charge on the public treasury." When federal funds are involved, the judiciary is powerless to uphold a claim of estoppel because such a holding would encroach upon the appropriation power granted exclusively to Congress by the Constitution.

*Id*. at 955 (quoting *In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir. 1987)). We went on to explain that "[w]hile this result may seem harsh . . . . [It] 'does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.'" *Id*. (quoting *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385 (1947)).

Here, as in *Gowland*, we find the doctrine of equitable estoppel inapplicable. The Supreme Court has made clear that "judicial use of the equitable doctrine of estoppel cannot grant respondent a money remedy that Congress has not authorized." *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426 (1990). Under the Appropriations Clause of the Constitution, "[m]oney may be paid out only through an appropriation made by law; in other words, the payment of money from the Treasury must be authorized by a statute." *Id*. at 424. While *Richmond* dealt with a claim of estoppel based on the actions of a government employee, our holding in *Gowland* makes clear that the same principle applies to claims against WYOs, because SFIPs are ultimately supported by federal funds. Although the Supreme Court has not categorically held equitable estoppel unavailable in cases involving government funds, we find that such a claim is not viable in this case. Our holding is also consistent with the principle that

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of

5

> this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

*Merrill*, 332 U.S. at 384; *see also Dawkins v. Witt*, 318 F.3d 606, 611-12 (4th Cir. 2003) (discussing the applicability of equitable estoppel in a claim against FEMA under the NFIA, and concluding that a FEMA adjuster's assurances that FEMA was not concerned with the sixty day POL deadline and FEMA's acceptance of an untimely POL were insufficient to invoke equitable estoppel under the standard established by the Supreme Court).[2]

Where federal funds are implicated, the person seeking those funds is obligated to familiarize himself with the legal requirements for receipt of such funds. *See Heckler v. Cmty. Health Services of Crawford County, Inc.*, 467 U.S. 51, 63 (1984) ("Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law . . . . [T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law."). While Wright purchased his SFIP from Allstate, the NFIP is a federally-administered program supported by funds drawn from the federal treasury. *See Gowland*, 143 F.3d at 955. The terms of the SFIP are dictated by FEMA, and cannot be waived or modified by Allstate. 44 C.F.R. §§ 61.4(b), 61.13(d). Under these circumstances, and in light of our previous case law, we hold that the district court erred in estopping Allstate from asserting Wright's failure to file an adequate POL as a basis for denying his claim.

We are also not persuaded by Wright's argument that his breach of contract claim is not one

---

[2] The cases on which Wright cites as permitting estoppel of a WYO under the NFIA predate the Supreme Court's decision in *Richmond*, this court's decisions in *Gowland* and *Forman*, and FEMA's adoption of an SFIP policy provision cautioning insured's against reliance on the statements of adjusters provided by the FEMA or a WYO.

for federal funds. Wright's reliance on 42 U.S.C. § 4081(c)'s provision that "the director of the Federal Emergency Management Agency may not hold harmless or indemnify an agent or broker for his or her error or omission" is misplaced. Even assuming that § 4081(c) applies to claims adjustment, it is plainly limited to claims against agents and brokers, as distinct from WYOs. *See* 42 U.S.C. § 4081(a) (referring to insurance companies as distinct from agents and brokers), § 4081(c) (referring only to claims against agents and brokers who sell or undertake to sell flood insurance policies under the NFIP). Wright's argument that his breach of contract suit does not implicate federal funds because FEMA may, in some cases, choose not to reimburse a WYO is similarly unavailing. FEMA regulations permit FEMA to decline to recognize as a reimbursable loss cost claims grounded in actions by the WYO which FEMA determines are "significantly outside the scope of this Agreement." 44 C.F.R. Pt. 62, App. A. Art. III(D)(4). Wright has provided no more than a conclusory assertion that this provision renders his claim something other than a claim for federal funds. Moreover, courts have consistently held that claims on SFIPs issued by WYOs are actions for federal funds. *Gibson v. Am. Bankers*, 289 F.3d 943, 946 (6th Cir. 2002); *Van Holt v. Liberty Mut. Fire Ins. Co.,* 163 F.3d 161, 166 (3d Cir. 1988); *Gowland*, 143 F.3d at 955.

III

Wright argues that the district court erred in dismissing his state law claims as preempted. We review the district court's preemption analysis *de novo*. *Witty v. Delta Airlines, Inc.*, 366 F.3d 380, 382 (5th Cir. 2004). Preemption of state law may be the result of either express preemption, field preemption, or conflict preemption. *Perry v. Mercedes Benz of N. Am., Inc.*, 957 F.2d 1257, 1261 (5th Cir. 1992).

Two decisions from this court informed the district court's conclusion that Wright's state law

7

claims against Allstate were preempted by federal law: *West v. Harris*, 573 F.2d 873 (5th Cir. 1978) and *Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793 (5th Cir. 1993). In *West*, the court determined that federal rather than state law applied to a claim for attorney's fees in a flood insurance dispute, because the flood insurance program was a "child of Congress, conceived to achieve policies which are national in scope, and [because] the federal government participates extensively in the program both in a supervisory capacity and financially . . . ." *West*, 573 F.2d at 881. In *Spence*, we held that state law determined the statute of limitations for an insured's state law tort claims against a WYO. 996 F.2d at 796.

Like others before it, the district court in this case interpreted our decisions in *West* and *Spence*, taken together, as holding that state law claims based on claims procurement were not preempted, while state law claims based on claims adjustment were. *See, e.g. Mesa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 513, 521 (D.N.J. 2000). Other courts, meanwhile, have read *Spence* to hold that state law tort claims against WYOs, whether based on procurement or claims adjustment, are not preempted by federal law. *See Davis v. Travelers Prop. & Cas. Co.*, 96 F. Supp. 2d 995, 1003-04 (N.D. Cal. 2000).[3]

A careful reading of *Spence*, however, reveals that *Spence* does not hold that state law tort claims are not preempted by the NFIA. The issue in *Spence* was a narrow one: whether federal or state law determined the statute of limitations for bringing state law claims against a WYO. While

---

[3] We endorsed the latter view in an unpublished decision, *Richmond Printing LLC v. Dir. Fed. Emergency Mgmt. Agency*, 72 Fed.Appx. 92, 2003 WL 21697457 (5th Cir. July 21, 2003). There, we reconciled *West* and *Spence* as distinguishing between state law claims tied to the contract itself, which are preempted, and extracontractual tort claims, which are not. We went on to hold that, while the insured's state law claims against the WYO in that case were not preempted by federal law, they were impossible of success.

we held that state law would govern the statute of limitations for state law tort claims, we did not foreclose the possibility of field or conflict preemption. Rather, our holding was premised on the fact that "[t]he NFIA contains no express preemption provision" and "[n]either [the insurer] nor the federal government as amicus suggests preemption of the state law fraud claim." 996 F.2d at 797 n.20. Thus, the issue of whether the NFIA preempted state law tort claims was not before the court in *Spence*, and the court did not address it.

In this case, by contrast, the question of whether federal law preempts state law tort claims based on a WYO's handling of an insurance claim is squarely before the court. The Third and Sixth Circuits have recently addressed the issue of preemption under the NFIA, holding that such state law claims are preempted. *C.E.R. 1988, Inc. v. The Aetna Casualty & Surety Co.*, 386 F.3d 263 (3d. Cir. 2004); *Gibson*, 289 F.3d 943. In *C.E.R. 1988,* the insured brought territorial tort law claims against the insurer, Aetna, which moved for summary judgment on the ground that such claims were preempted by federal law. *Id.* at 265-66. The Third Circuit concluded that the insured's state law tort claims were preempted because "the application of state tort law would impede Congress's objectives" in enacting the NFIA. *Id.* at 270. "Indisputably, a central purpose of the Program is to reduce fiscal pressure on federal flood relief efforts." *Id.* (citing *Till v. Unifirst Fed. Sav. & Loan Ass'n*, 653 F.2d 152, 159 (5th Cir. 1981)). The court reasoned that "[i]f FEMA refused to reimburse WYO carriers for their defense costs, insurers would leave the Program, driving the price of insurance higher. The alternative, remuneration for losses incurred in such suits, would directly burden the federal Treasury." *Id.* The court also implicitly rejected the argument that state law tort claims against WYOs should not be preempted because FEMA might refuse to reimburse the WYO in some cases. *Id.* at 271 ("FEMA ordinarily will be responsible financially for the costs of defending a

9

lawsuit against a WYO company.  The efficiency goals of the Program, on balance, would better be served by requiring claimants to resolve their disputes by means of the remedies FEMA provides.").  In *Gibson*, the Sixth Circuit similarly concluded that state law tort claims relating to a WYO handling of a flood insurance claim are preempted by state law.  289 F.3d at 948-50.

We join these circuits in holding that state law tort claims arising from claims handling by a WYO are preempted by federal law.  This conclusion is consistent with our holding in *West* that federal rather than state law governs entitlement to attorney's fees because the NFIP is a "child of Congress, conceived to achieve policies which are national in scope, and [because] the federal government participates extensively in the program both in a supervisory capacity and financially." *West*, 573 F.2d at 881.  We note that the significance of this holding may have been pretermitted by FEMA regulation.  In 2000, FEMA amended the language of SFIP policies to state: "This policy and all disputes arising from the handling of any claim under the policy are governed exclusively by the flood insurance regulations issued by FEMA, the National Flood Insurance Act of 1968 . . . and Federal common law."  44 C.F.R. pt. 61, app. A(1), art. IX.  While no circuit has yet addressed whether this amendment is effective as an express preemption of state law claims, it can obviously be so argued.[4]  *See In re Cajun Elec. Power Coop., Inc.*, 109 F.3d 248, 254 (5th Cir. 1997) ("Federal regulations have no less pre-emptive effect than federal statutes."); *see also C.E.R.*, 386 F.3d at 269 n.6, 271 n.10 (stating that "[a]rguably the Policy now contains such [an express] provision" and that "[i]n its current form, the Policy appears explicitly to preempt state law tort suits").

We also agree with the district court's conclusion that Wright cannot maintain a claim against

---

[4] Allstate has not, however, argued that this policy amendment is applicable to the case before us.  Accordingly, we analyze this case as a preamendment dispute.

Chapman, whom Wright concedes was not actually involved in the letter that forms the basis for Wright's claims.

V

Because we hold that the district court erred in estopping Allstate from asserting Wright's failure to file a POL as a basis for denying his claim, and because we hold that the district court did not err in holding Wright's state law claims preempted, we do not reach the parties' arguments regarding the district court's damage award, Allstate's argument that the district court is prohibited from awarding costs and attorney's fees in a suit under the NFIA, or Allstate's alternative arguments in opposition to Wright's breach of contract claim.

Finally, Wright argues that the district court erred in denying his motion to amend his complaint to add federal common law claims for fraud and negligent misrepresentation. This court reviews the denial of a motion to amend the complaint for abuse of discretion, though there is a presumption in favor of permitting amendments. *Mayeaux v. La. Health Serv. and Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Among the permissible bases for denial of a motion to amend are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The district court's order denying Wright's motion to amend his complaint does not explain on what basis the court denied the complaint, and Allstate advocated multiple theories for denying Wright's motion. Specifically, Allstate argued both that the motion was untimely under the local rules and that Wright's proposed common law claims were not cognizable under the NFIA. Because we are unable to determine with certainty from the record the basis for the district court's decision, we

11

remand to the district court for clarification of the basis of its ruling.

For the forgoing reasons, we AFFIRM in part and REVERSE in part the district court's decisions, and REMAND this case for further proceedings not inconsistent with this opinion.