EMILIO M. GARZA, Circuit Judge,
dissenting.
I disagree with the majority’s characterization of Campo’s claim as “procurement-related,” as his case is clearly one of “claims handling” and thus preempted by federal law. For this reason, I respectfully DISSENT from the majority opinion.
It is undisputed by the parties that Campo received notice that his policy was about to expire, and that he was required to pay a renewal premium in order to renew his policy. It is also undisputed that Campo failed to pay the premium by designated date, August 13th. Campo knew he had a 30-day grace period[1] that ended on September 13th, and testified in his deposition that he intended to pay the premium before that date. Hurricane Katrina struck before September 13th, and FEMA mandated an additional 90-day extension to meet the deadline, thus giving Campo until December 12th to pay the premium. At any time until December 12th, Campo could have paid his renewal premium and continued his coverage with no break — the only requirement necessary for Campo to have received payment on his claim was that he pay his premium, which he failed to do. Campo filed a claim under the policy soon after Katrina hit, and now argues that his own failure to pay his renewal premium renders this case one of “procuring” a new policy rather than the “handling” of an existing claim.
The majority opinion posits that because the policy had expired, the claim filed by Campo was merely a “fictitious” one. This (mis)eharacterization ignores the 120-day grace period that was in effect. As Campo himself admitted in his deposition, he often utilized the grace period in order to make late payments. Though Campo never paid the renewal premium, he testified that he assumed that the insurance was in place until the end of the 30-day grace period and thus that damage due to Katrina was covered by the policy. Clearly, then, his later dealings with Allstate were with respect to what he regarded (and what Allstate regarded[2]) as an existing claim — a *760 quintessential situation of claims “handling.”
The grace period given to Campo, which effectively kept his policy “live” (as at any point he could have paid the premium and obtained coverage for damage caused by Katrina) until December 12th, militates strongly in favor of finding this claim to be handling-related rather than procurement-related. There is no indication from the record that Campo intended to “procure” a brand-new policy. Indeed, Campo could not have been attempting to do so, as there is a 30 day waiting period for the effective date of a new policy,[3] meaning that a new policy would have not have retroactively affected, Campo’s claim for damages incurred from Hurricane Katrina. Thus, there is a logical and legal inconsistency to the majority’s attempt to cast Campo’s efforts to settle his claim as “procurement” of a new policy; Campo’s state law claims of detrimental reliance, negligence and bad faith damages clearly relate to the policy in effect when Hurricane Katrina struck, but under the majority’s view would be allowed to go forward in connection with a policy that had not yet come into existence and could have nothing to do with damages arising from Hurricane Katrina.
Finally, contra the majority, the federal regulations speak to the situation at hand. Where, as here, the insurance company properly sent notice that the policy was set to expire and that a renewal premium was required, the heart of the claim — the effect of the nonpayment of a renewal premium — is clearly set out in the SFIP.[4] Because Campo’s claim is covered by the federal rules, it is preempted.[5]
*761 Allstate complied with the procedures established by the SFIP. The operation of the 120-day grace period — again, mandated by federal law — during which, at any time, Campo could have paid his premium and recovered for damages caused by Katrina, makes this case a clear example of a “handling”-related claim and is thus preempted under Wright v. Allstate Ins. Co., 415 F.3d 384 (5th Cir.2005).[6] Accordingly, I would affirm the district court’s grant of summary judgment to Allstate, and thus I respectfully DISSENT from the majority.

. An automatic 30-day grace period applied. 44 C.F.R. pt. 61 app. A(l), art. VII(H)(2)(2008).

. Allstate also treated the claim as an existing one, sending Campo a letter indicating that it had evaluated the claim and requested the *760 NFIP to issue a check to Campo for the policy limit of $98,200.

. 44 C.F.R. 61.11(c) (“Except as provided by paragraphs (a) and (b) of this section, the effective date and time of any new policy or added coverage or increase in the amount of coverage shall be 12:01 a.m. (local time) on the 30th calendar day after the application date and the presentment of payment of premium; for example, a flood insurance policy applied for with the payment of the premium on May 1 will become effective at 12:01 a.m. on May 31.")

. The SFIP states:
Policy Renewal
1. This policy will expire at 12:01 a.m. on the last day of the policy term.
2. We must receive the payment of the appropriate renewal premium within 30 days of the expiration date.
3. If we find, however, that we did not place your renewal notice into the U.S. Postal Service, or if we did mail it, we made a mistake, e.g., we used an incorrect, incomplete, or illegible address, which delayed its delivery to you before the due date for the renewal premium, then we will follow these procedures:
a. If you or your agent notified us, not later than one year after the date on which the payment of the renewal premium was due, of non-receipt of a renewal notice before the due date for the renewal premium, and we determine that the circumstances in the preceding paragraph apply, we will mail a second bill providing a revised due date, which will be 30 days after the date on which the bill is mailed, b. If we do not receive the premium requested in the second bill by the revised due date, then we will not renew the policy. In that case, the policy will remain an expired policy as of the expiration date shown on the Declarations Page.
4. In connection with the renewal of this policy, we may ask you during the policy term to recertify, on a Recertification Questionnaire we will provide to you, the rating information used to rate your most recent application for or renewal of insurance.
44 C.F.R. pt. 61, app. A(l), art. VII(H)(2008). [Emphasis added.]

. The district court cases cited by the majority are distinguishable from the instant case on the facts. In Landry v. State Fann Fire & Cas. Co., 428 F.Supp.2d 531, 535 (E.D.La.2006), the plaintiffs, having transferred their policy to a new insurance agent, sued over the new agent's failure to obtain contents coverage for their home despite assurances from the agent that they were fully covered. In Jackson v. *761 State Fire & Cas. Ins. Co., 2006 WL 3332835 (E.D.La., November 9, 2006), plaintiffs alleged that the insurance agent had breached a duty in failing to renew their flood insurance policy. In Meza v. All State Ins. Co., 2007 WL 594900 (W.D.La., February 15, 2007), the plaintiffs sued Allstate for the actions of its agent in neglecting to make changes to reflect that the mortgage on the insurance policy was cancelled. As a result, the insurance policy had expired for more than a year, with no notice to the plaintiffs, when Hurricane Katrina struck and destroyed the contents of the plaintiffs’ home. All three cases implicated the insurer's extra-contractual (i.e. not regulated by federal law) duties to the plaintiffs. See Landry, 428 F.Supp.2d at 535 ("State Farm’s liability arises through that agent and his extra-contractual duty of reasonable diligence; therefore, the Plaintiffs' claims do not result from, relate to, or arise from State Farm's compliance with FEMA regulations under an NFIP policy.”) Here, by contrast, Allstate provided actual notice to Campo that he had to pay a renewal premium in order to continue his coverage, and Campo's failure to pay the premium is, as previously stated, squarely within the scope of the federal regulations.
Claims more akin to Campo's have been treated by district courts in this Circuit as handling-related and thus preempted by federal law. See Fernandez v. Chase Manhattan Mortg. Corp., 2008 WL 1927607 (E.D.La., April 30, 2008) (holding that plaintiff's state law claims against insurer were preempted where insurer provided expiration and renewal notices and plaintiff took no action); Welsch v. Hartford Fire Ins. Co., 2007 WL 2406985 (E.D.La., August 21, 2007) (holding that claim that insurance company improperly cancelled policy was handling-related); Newman v. Allstate Ins. Co., 2006 WL 2632116 (E.D.La. September 12, 2006) (bad faith and breach of contract claims related to allegedly improperly cancelled policy are handling-related).

. Because I find the issue governed by existing precedent, I would not reach the question of whether "procurement”-related claims are preempted by federal law.