# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41165

ROBERT SPONG; KERRY SPONG,

   Plaintiffs - Appellants

v.

FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE
COMPANY; FIDELITY NATIONAL INSURANCE SERVICES, L.L.C.;
CRYSTAL BEACH INSURANCE AGENCY, L.L.C.; UNITED STATES OF
AMERICA,

   Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

July 5, 2017

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:10-CV-228

Before KING, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

  The plaintiffs' vacation home near Galveston, Texas, was destroyed by
Hurricane Ike in 2008. They submitted a proof-of-loss claim to Fidelity under
the federal insurance policy they obtained on the property. While investigating
the claim, Fidelity discovered that, due to the home's location, the plaintiffs'

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH
CIR. R. 47.5.4.

No. 16-41165

insurance policy was void from its inception. The plaintiffs filed suit against Fidelity and the Government asserting state-law and Federal Tort Claims Act ("FTCA") claims.

The plaintiffs now appeal the district court's grant of summary judgment for Fidelity and the Government. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

The facts and legal framework underlying this appeal are extensively discussed in our prior opinion from a 2015 appeal. We will repeat those essential to the resolution of this appeal. *See Spong v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 787 F.3d 296, 299–302 (5th Cir. 2015). In *Spong*, Fidelity brought an interlocutory appeal of the district court's denial of its motion for summary judgment. *Id.* at 298–99. Fidelity had asserted, among other things, "that the Spongs' claims were preempted by federal law."[1] *Id.* at 298. We concluded that the Spongs' state-law claims that involve the procurement of insurance were not preempted but those involving "claims handling" were preempted. *Id.* at 299. We also noted that "even though not preempted, certain claims cannot succeed as a matter of law." *Id.*

We reviewed "both Fidelity's federal preemption and reasonable reliance arguments." *Id.* at 304. We determined that "the issuance of a policy by Fidelity was not a representation on which the Spongs could rely." *Id.* at 312. In light of our analysis on the preemption question, we remanded to the district court for reconsideration of Fidelity's summary judgment motion. *Id.*

---

[1] Fidelity also sought summary judgment on the ground that even if the Spongs' state-law claims were not preempted, they failed as a matter of law because the Spongs could not establish justifiable reliance. *See Spong*, 787 F.3d at 302. The district court denied Fidelity's motion on both grounds but certified for interlocutory appeal only the preemption question, which involved determining whether our decision in *Campo v. Allstate Insurance Co.*, 562 F.3d 751 (5th Cir. 2009), remained good law. *Id.* at 302–03.

No. 16-41165

On remand, the district court determined that "any claim involving any alleged misrepresentations by Fidelity and detrimental reliance by the Spongs fails as a matter of law." It reached this conclusion based on our holding in *Spong* that "[u]nder the rationale of" *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380 (1947), and *Heckler v. Community Health Services*, 467 U.S. 51 (1984), "the Spongs cannot claim ignorance of the statutes and regulations as an excuse for relying on Fidelity's issuance of a policy as a determination or representation that their property was not located in the" Coastal Barrier Resources System ("CBRS"), an area where property is uninsurable under the National Flood Insurance Program ("NFIP"). *See Spong,* 787 F.3d at 309. Attributing this knowledge to the Spongs also precluded their vicarious liability, negligence, and gross negligence claims. Accordingly, the district court granted Fidelity's motion for summary judgment.

That same day, the district court also ruled on the Government's converted motion for summary judgment, which it had stayed consideration of pending resolution of the earlier appeal. The Government sought dismissal of all of the Spongs' claims against it under the FTCA on several grounds, including that the Spongs failed to exhaust their administrative remedies. The district court determined there were at least two occasions prior to October 14, 2009, which "should have motivated the Spongs to investigate the possible invalidity of the policy and the potential for injury." Thus, the court disagreed with the Spongs' assertion that their October 12, 2011, administrative complaint was timely and dismissed the action against the Government for lack of subject-matter jurisdiction. The Spongs timely appealed.

Approximately one month after rendering its decision in the underlying matter, the same district court granted summary judgment to Fidelity in a substantially similar case involving a neighbor of the Spongs whose home was

3

No. 16-41165

also destroyed by Hurricane Ike.[2]  *See Lobeck v. Licatino*, No. CV G-10-423, 2016 WL 3058300, at *1 (S.D. Tex. May 31, 2016).  The *Lobeck* matter was stayed pending our resolution of *Spong. Id.*  Once we resolved that first appeal, the *Lobeck* court relied on it to hold that the claims there of reasonable reliance were "unprovable" and that the court was "foreclosed from even considering evidence of [the plaintiff's] actual or inferior ignorance of the law[.]"  *Id.* at *2.  As to the plaintiff's contention there was a fact issue "of whether she knew the property was within the CBRS," the district court concluded that *Spong* foreclosed that argument as the plaintiff "had an independent duty to determine the property's eligibility[.]"  *Id.*

Lobeck was timely appealed on June 29, 2016.  On March 7, 2017, a panel of this court issued a brief per curiam opinion affirming the district court's grant of summary judgment.  *See Lobeck v. Licatino*, No. 16-40967, 2017 WL 923387, at *1 (5th Cir. Mar. 7, 2017), *petition for cert. filed* (U.S. June 8, 2017) (No. 16-1467).

DISCUSSION

"We review the district court's grant of summary judgment *de novo*, applying the same standards as the district court."  *Weeks Marine, Inc. v. Standard Concrete Prods., Inc.*, 737 F.3d 365, 368 (5th Cir. 2013).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  We may affirm a grant of summary judgment "on any ground raised below and supported by the record."  *Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 478 (5th Cir. 2008).

---

[2] In addition to the neighboring locations of the two properties, the overlap between the two cases is extensive.  For example, the plaintiff in *Lobeck* asserted virtually all of the same claims as the Spongs.

No. 16-41165

On appeal, the Spongs appear to challenge both the district court's grant of summary judgment and the prior panel decision in *Spong*. In fact, many of the arguments the Spongs now assert have already been resolved in the first appeal. Such arguments overlook the doctrine of the law of the case.[3] Relevant here, the doctrine "generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal." *Todd Shipyards Corp. v. Auto Transp., S.A.*, 763 F.2d 745, 750 (5th Cir. 1985). Accordingly, we will review only those arguments and claims that remain viable.

## I.    *Grant of Summary Judgment for Fidelity was Proper*

This appeal arises from the issuance and subsequent renewals of a federal Standard Flood Insurance Policy ("SFIP") that the Spongs obtained for their Galveston vacation home under the NFIP. *Spong*, 787 F.3d at 298. Fidelity is a Write-Your-Own ("WYO") Program insurance carrier participating in the NFIP, which was created by the National Flood Insurance Act of 1968. *Id.* at 299. By statute, WYO-insurance carriers act in a fiduciary capacity as the "fiscal agents of the United States[.]" 42 U.S.C. § 4071(a)(1). In performing this role, they "issue SFIPs in their own names, and arrange for the adjustment, settlement, payment and defense of all claims arising from the policies." *Gallup v. Omaha Prop. & Cas. Ins. Co.*, 434 F.3d 341, 342 (5th Cir.

---

[3] We previously described the doctrine this way:

> The doctrine of the law of the case grew out of the practical view that, once an appellate court has decided an issue in a particular case both the District Court and the Court of Appeals should be bound by that decision in any subsequent proceedings in the same case.

*Falcon v. Gen. Tel. Co.*, 815 F.2d 317, 319–20 (5th Cir. 1987). As with most rules of law, there are exceptions to the doctrine, but none apply here. *See id.* at 320.

2005). All payments for claims arising from an SFIP are made from the United States Treasury. *Id.*

Given this statutory framework and our prior *Spong* decision, we must determine whether *Merrill* and *Heckler* foreclose the Spongs' claims against Fidelity. We begin with a brief review of those cases and our *Lobeck* decision, before addressing the Spongs' surviving claims.

In *Merrill,* the Court laid the groundwork for our analysis by stating that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Merrill*, 332 U.S. at 384. The majority opinion further noted that requiring men to "'turn square corners when they deal with the Government,' does not reflect a callous outlook." *Id.* at 385 (quoting *Rock Island A. & L.R. Co. v. United States*, 254 U.S. 141, 143 (1920)). Instead, "[i]t merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury." *Id.*

The Court later expanded this general rule of constructive knowledge by stating that "[p]rotection of the public fisc requires those who seek public funds act with scrupulous regard for the requirements of law[.]" *Heckler*, 467 U.S. at 63. Thus, participants in federal benefits programs — like the NFIP — have a legal duty to "familiarize" themselves with the program's "legal requirements for cost reimbursement." *Id.* at 64; *see also Wright v. Allstate Ins. Co.*, 415 F.3d 384, 388 (5th Cir. 2005). Given the "special nature of the insurance relationship" involved under the NFIP, courts have made it clear that an "insured has a duty to read and understand the terms of its SFIP." *Richmond Printing LLC v. Dir. Fed. Emergency Mgmt. Agency*, 72 F. App'x 92, 98 (5th Cir. 2003).

Despite extensive briefing and the various issues presented, which largely overlap with the ones before us, the *Lobeck* panel affirmed the district

court through brief and clear reasoning:

> Lobeck contends that she reasonably relied on Fidelity and GIA's misrepresentations that her property was insurable. However, she was insured by the federal government through the NFIP; thus Fidelity and GIA were acting as government agents. *See Spong v. Fidelity National Property and Casualty Insurance Company*, 787 F.3d 296, 309 (5th Cir. 2015); *Richmond Printing, LLC v. FEMA*, 72 F. App'x 92, [98] (5th Cir. 2003). As the Supreme Court has previously stated, "those who deal with the Government are expected to know the law and may not rely on the conduct of government agents contrary to the law." *See Heckler v. Community Health Services*, 467 U.S. 51, 63 (1984); *Federal Crop Insurance Co. v. Merrill*, 332 U.S. 380, 384–85 (1947). Consequently, Lobeck was charged with the constructive knowledge that her property is located in the CBRS, and so her argument fails.

*Lobeck*, 2017 WL 923387, at *1.

The same result follows here. On remand, the district court determined that eight of the Spongs' claims required proof of actual misrepresentation and must be dismissed. Likewise, the court determined that the Spongs' gross negligence claim failed due to the constructive knowledge attributed to the Spongs as participants in the NFIP. As to the Spongs' negligence claim against Fidelity, the district court noted that under federal law, Fidelity owes its duty to the United States to "protect against improper expenditures of federal funds." All of these determinations are consistent with the rationale of *Merrill* and *Heckler* and guided by our prior decisions in *Spong* and *Lobeck. See Spong*, 787 F.3d at 309–12.

Regarding their Texas Deceptive Trade Practices Act ("DTPA") unconscionability claim, the Spongs argue that "reliance is not an element of" such a claim. Fidelity, on the other hand, asserts that "there cannot be a disparity in the knowledge of the" parties "upon which to predicate a Texas DTPA claim" under the *Merrill/Heckler* rationale. A brief review of Texas law tilts the argument in Fidelity's favor.

No. 16-41165

An "[u]nconscionable action or course of action" is defined as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." TEX. BUS. & COM. CODE § 17.45(5). To prove this claim, "a plaintiff must show that the defendant's acts took advantage of her lack of knowledge and 'that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.'" *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex. 1998) (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985)).

Given the Spongs' imputed knowledge, Fidelity correctly argues that the unconscionability claim was properly dismissed. In *Spong,* we concluded it was "incumbent upon the Spongs to determine whether their property was eligible for a SFIP." 787 F.3d at 309. We also determined that, at the time the Spongs obtained the SFIP, they were "in possession of essentially the same facts as Fidelity." *Id.* at 310. Therefore, an essential element of the claim — a lack of knowledge — is absent. Moreover, there is no evidence that Fidelity attempted to take advantage of the Spongs, let alone to a "grossly unfair degree."

Though the Spongs circumstances are unfortunate, "[t]he principles unique to governmental insurance policies that require a strict construction of their terms and requirements can sometimes create ostensibly inequitable results." *Jacobson v. Metro. Prop. & Cas. Ins. Co.*, 672 F.3d 171, 176 (2d Cir. 2012). In a factually analogous case, we emphasized "that the National Flood Insurance Program is federally subsidized and enables consumers to obtain flood insurance which virtually would be impossible to purchase in the marketplace." *Gowland v. Aetna*, 143 F.3d 951, 955 (5th Cir. 1998). Similar to *Gowland*, requiring the Spongs "to turn square corners when dealing with the Treasury 'does not reflect a callous outlook. It merely expresses the duty of all courts to observe the conditions defined by Congress for charging the public treasury.'" *Id.* (quoting *Merrill*, 332 U.S. at 385).

No. 16-41165

The district court properly dismissed all claims against Fidelity.

## II.     *Claims Against the Government are Time-Barred*

The FTCA provides that "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues[.]"  28 U.S.C. § 2401(b). Under federal law, a plaintiff's claim generally accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Ramming v. United States*, 281 F.3d 158, 162 (5th Cir. 2001) (quoting *Brown v. Nationsbank Corp.*, 188 F.3d 579, 589–90 (5th Cir. 1999)).  This application of the discovery rule means that a cause of action accrues "when the plaintiff[s] discover[ed], or, in the exercise of reasonable diligence should have discovered, the fact of the injury and its cause." *Young v. United States*, 727 F.3d 444, 447 (5th Cir. 2013) (alteration in original) (quoting *Bush v. United States*, 823 F.2d 909, 911 (5th Cir. 1987)).

Recently, the Court held that the FTCA's two-year statute of limitations "is not a jurisdictional requirement." *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1633 (2015).  According to the Court, "[t]he time limits in the FTCA are just time limits, nothing more.  Even though they govern litigation against the Government, a court can toll them on equitable grounds." *Id.*  The Spongs do not argue they are entitled to equitable tolling so we do not address that issue.

Instead, the Spongs contend that genuine issues of material fact exist as to when their claims accrued.  The Spongs argue that they did not discover their injury until October 14, 2009, when they received a denial letter from Fidelity, which rendered their October 12, 2011, complaint timely.  The district court rejected this argument and cited at least two "storm warnings" that put the Spongs on notice of the possible invalidity of the policy.  The first was the

March 2006 closing on the property, where the Spongs received an elevation certificate, which indicated the property was within the "Coastal Barrier Act[.]" The second was a thunderous warning: Fidelity's informing the Spongs on January 27, 2009, "that it may not honor their insurance claim because the property was located in the CBRS[.]"

The district court determined either of these events "provided ample evidence of the possible existence of a claim for misrepresentation against . . . Fidelity[.]"   Given that the Spongs waited until almost two years after receiving the October 14, 2009, denial letter from Fidelity, the district court concluded the claims were untimely and that it lacked subject-matter jurisdiction.   Accordingly, the court granted summary judgment for the Government and dismissed all claims against it.

Beyond these warnings, the Government contends that a September 25, 2009, letter sent from the Fish and Wildlife Service ("FWS") to the Spongs served as an "explicit notification" to the Spongs regarding whether their property was eligible for SFIP coverage.   According to the Government, the letter indicated the Spongs' home was within the CBRS and explained a clerical error by the agency which previously stated otherwise.   The Government thus asserts that the subsequent October 14 denial letter sent by Fidelity "merely confirmed what [the Spongs] already knew or should have known: that their flood insurance application had relied on an erroneous statement by the [FWS], and that their policy was invalid at its inception because their property was . . . located within the [CBRS]."

We hold that the September 25, 2009, letter, which was emailed to the Spongs on September 29, 2009, began the accrual for the Spongs' tort claim against the Government. The letter expressly provided the Spongs notice that their federal insurance policy was invalid and explained the FWS's prior erroneous determination.   At that point, it was undisputed that the Spongs

knew or had reason to know of the injury which was the basis for their cause of action against the Government. *See Ramming*, 281 F.3d at 162. Given that, the October 14, 2009, denial letter was, as the Government asserts, "little more than a predictable formality."

Although the district court mistakenly but understandably characterized the statute of limitations at 28 U.S.C. § 2401(b) as jurisdictional, its grant of summary judgment was proper because there is no genuine issue of material fact as to whether the Spongs' FTCA claims were submitted within the two-year statute of limitation. The undisputed evidence shows that by September 29, 2009, the Spongs were on notice regarding the accrual of their tort claim.

AFFIRMED.