**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 8, 2009

Charles R. Fulbruge III
Clerk

No. 08-20139

VANTAGE TRAILERS INC.

Plaintiff-Appellant

v.

BEALL CORPORATION

Defendant-Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, JOLLY, Circuit Judge, and MONTALVO,[*] District
Judge.

EDITH H. JONES, Chief Judge:

Vantage Trailers, Inc. ("Vantage") filed suit seeking a declaratory
judgment that its design for a new aluminum bottom dump trailer would not
infringe any valid trademark rights held by Beall Corporation ("Beall"). In a
thorough and well-reasoned opinion, which develops the facts more thoroughly
than we need do here, the district court dismissed the case for lack of subject
matter jurisdiction because Vantage did not have a substantially fixed and
definite trailer design when it filed the action. We affirm.

---

[*] District Judge of the Western District of Texas, sitting by designation.

## I. BACKGROUND

Beall manufactures and sells an aluminum bottom dump trailer, the "Beall Bullet," which is protected by U.S. Trademark Registration No. 1,622,364. The mark covers "the design of a truck trailer of the bottom dumping type" and has been registered since 1990. In early 2006, Vantage, a competitor, began design of its own bottom dump trailer. On July 17, 2006, David Shannon, Beall's Vice President, sent a letter to Vantage stating:

> It has come to my attention that your company has built or is in the process of building an aluminum bottom dump trailer with the distinctive shape of the "Beall Bullet®" trailer that is manufactured by Beall Corporation's subsidiaries Beall Trailers of Montana and Beall Trailers Sunnyside.
>
> . . .
>
> It is my duty to advise you that if your company places any trailers into service that violate any of the Beall trademarks we will pursue legal action to stop the infringement.

In response, Vantage filed this suit on September 25, 2006, seeking a declaratory judgment that Beall's trademark is invalid and that "the design, manufacture, sale and use of [Vantage's] aluminum bottom dump trailer does not infringe any valid intellectual property right" of Beall's. In addition, Vantage asserted claims for unfair competition based on Beall's assertion of its intellectual property rights.

In early November 2006, Beall filed a motion to dismiss based on the lack of personal jurisdiction and lack of standing. After Vantage responded, Beall withdrew its motion, but following discovery, Beall filed a second motion to dismiss the trademark declaratory judgment claim for lack of subject matter jurisdiction. The district court granted the motion to dismiss and *sua sponte* dismissed the unfair competition claim, finding that it merely duplicated the trademark claim. Vantage appeals both dismissals. We address each in turn.

## II. STANDARD OF REVIEW

The district court dismissed the suit for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The plaintiff has the burden of proving subject matter jurisdiction by a preponderance of the evidence. *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008). In evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). This court reviews the district court's legal conclusions *de novo* and factual determinations for clear error. *Id.*

## III. DISCUSSION

### A. Declaratory Judgment

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), requires an "actual controversy" between the parties to the declaratory judgment action. The declaratory judgment plaintiff must establish that this requirement was satisfied at the time the complaint was filed—post-filing conduct is not relevant. *Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361, 1373 (Fed. Cir. 2004). The Supreme Court directs that the dispute must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764 (2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S. Ct. 461 (1937)). Declaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts. *MedImmune*, 549 U.S. at 127. At the same time, however, declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit. *Id.* at 129–30.

A common framework for analysis applies to all patent, copyright, and trademark declaratory judgment suits. *Texas v. West Pub. Co.*, 882 F.2d 171, 175 (5th Cir. 1989). To assess standing in declaratory judgment suits, federal

courts have traditionally applied a two-part test that required the declaratory plaintiff to show:

> (1) an explicit threat or other action by the [holder of a patent or trademark], which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity.

*Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1343–44 (Fed. Cir. 2007) (internal quotation marks omitted). Following *MedImmune*, the "reasonable apprehension of suit" requirement no longer applies. *Id.* at 1344. Instead, the Court clarified that "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510 (1941)). In evaluating the justiciability of a declaratory judgment suit, courts must require a definite and concrete dispute, remembering the prohibition against "an opinion advising what the law would be upon a hypothetical set of facts." *MedImmune*, 549 U.S. at 127 (quoting *Aetna*, 300 U.S. at 240–41).

Vantage argues that a variety of its activities, centered around its design and attempted sale of an aluminum bottom dump trailer, demonstrate the immediacy and reality of the controversy between itself and Beall. Vantage worked with an engineer on product development, began construction of a new manufacturing facility, purchased specialized equipment, built a sub-frame, and offered to sell its new model trailers. It is undisputed that Vantage had begun

to manufacture some type of trailer—the question is whether the design was sufficiently fixed to allow evaluation of trademark infringement.[1]

The district court appropriately looked to *Sierra Applied Sciences, Inc. v. Advanced Energy Industries, Inc.*, 363 F.3d 1361 (Fed. Cir. 2004), in resolving this issue. In *Sierra Applied Sciences*, the declaratory plaintiff had begun development of a potentially infringing power supply at the time of suit. *Id.* at 1380. The Federal Circuit concluded that no immediate and real controversy existed: "Because the design was fluid on the date the complaint was filed, it was impossible to determine—on that date—whether any eventual design . . . would infringe [the] patents." *Id.*

The Seventh Circuit also discussed the need for a fixed design in evaluating intellectual property declaratory judgment actions:

> Our concern is not that the [product at issue] will never be produced, but rather that because of the relatively early stage of its development, the design which is before us now may not be the design which is ultimately produced and marketed. For a decision in a case such as this to be anything other than an advisory opinion, the plaintiff must establish that the product presented to the court is the same product which will be produced if a declaration of noninfringement is obtained.

*Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1216 (7th Cir. 1980). Although it has not required a completely fixed design—the eventually manufactured product need not be identical—the Federal Circuit has emphasized that the design must be fixed "particularly with respect to its potentially-infringing characteristics." *Sierra Applied Sciences*, 363 F.3d at 1379 (citing *Telectronics Pacing Systems, Inc. v. Ventritex, Inc.*, 982 F.2d 1520, 1527 (Fed. Cir. 1992)).

---

[1] At points in its brief, Vantage appears to shift from arguing that its activities constituted sufficient preparation for manufacturing of infringing trailers to arguing that its mere showing a customer a drawing of a trailer similar to Beall's constituted trademark infringement. Because Vantage did not raise the latter argument below, we do not consider it now. *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988).

Based on its analysis of *Sierra Applied Sciences*, the district court concluded that Vantage did not have a substantially fixed and definite trailer design when it filed the declaratory judgment action. We agree. We need not address whether this is a factual conclusion reviewed for clear error or a legal conclusion reviewed *de novo* because the result is the same under either standard.

Vantage distinguishes this case from *Sierra Applied Sciences* because a trademark, not a patent, is at issue. While patents protect the substance of a product, the structure of a device or the method to accomplish a task, trademarks protect the configuration or appearance. But this distinction between patents and trademarks weakens, rather than strengthens, Vantage's argument for justiciability. Typically, the functional elements of design will long precede the cosmetic. The compromises and alterations necessary to accomplish a product's purpose often dictate its appearance. *See Talking Rain Beverage Co. Inc. v. South Beach Beverage Co.*, 349 F.3d 601, 604 (9th Cir. 2003) ("[M]anufacturing considerations explain why [the trademarked] bottle looks the way it does. . . . [B]y adding a recessed/ grip area, [the producer] could manufacture a plastic bottle with curved sides that would not collapse."). Because aesthetic changes can ordinarily be made far later in the design process and with less expense than functional changes, trademark declaratory judgments raise a greater risk than patent declaratory judgments that the design presented may have little relation to the design ultimately produced and marketed.

Indeed, Vantage's brief acknowledges that during the litigation it "made certain modifications in the external configuration or appearance of the trailers it was working to build." Although Vantage has submitted an undated drawing of a bottom dump trailer allegedly made before the suit, the district court noted that one of Vantage's customers "testified that [Vantage] periodically sent to him

different depictions of trailers during the later part of 2006 and early 2007." While these ongoing modifications could be irrelevant to a patent-infringement analysis, appearance is the heart of the trademark inquiry.

The Second Circuit's decision in *Starter Corp. v. Converse*, 84 F.3d 592 (2d Cir. 1996) (per curiam), although predating *MedImmune*, illustrates a trademark dispute suitable for declaratory judgment. Starter, an athletic apparel manufacturer, and Converse, an athletic footwear manufacturer, both used designs incorporating five-pointed stars as trademarks. *Id.* at 594. Starter planned to enter the athletic footwear market and attempted to register its mark for footwear with the Patent and Trademark Office. *Id.* Converse opposed the registration and informed Starter that if Starter brought any shoes to market bearing a five-pointed star mark, Converse would sue for trademark infringement. *Id.* In response, Starter filed a declaratory judgment action. *Id.* The district court granted Converse's motion to dismiss for lack of subject matter jurisdiction, and Starter appealed. *Id.* In reversing the district court, the Second Circuit explained, "[Starter] would have been immediately prepared, at the time the complaint was filed, to begin manufacture and sale of shoes bearing the Starter Marks." *Id.* at 596. Declaratory judgment was appropriate because there was "no uncertainty" as to how Starter's marks would be used on the footwear. *Id.* at 597.

The present case differs from *Starter Corp.* in two crucial respects. First, Vantage was not "immediately prepared" to manufacture and sell the trailers at the time it filed suit. But more importantly, in *Starter Corp.*, the potentially-infringing characteristics were fixed at the time Starter filed suit. Converse and Starter both used actual marks, stamped or sewn into products. Although Starter provided an actual prototype shoe to the district court, the critical comparison was not between the designs of the shoes but between Converse's and Starter's five-pointed star emblems. Here, Beall describes its mark as

7

protecting "the distinctive shape" of the Bullet. Even though Vantage was preparing to enter the bottom-dump trailer market, its design had not become sufficiently fixed at the time of suit to compare its shape against that of Beall's trailers.

Among all the relevant circumstances of the controversy, Beall's letter threatening legal action weighs decidedly in Vantage's favor. Courts have long looked for an "indirect or implicit or covert charge or threat" against the infringer when evaluating reasonable apprehension of suit under the pre-*MedImmune* test. *E.g.*, *Goodrich-Gulf Chemicals, Inc. v. Phillips Petroleum Co.*, 376 F.2d 1015, 1019 (6th Cir. 1967) (analyzing whether the patent holder had charged infringement). An unfulfilled threat of action by the patent holder is precisely the type of bullying—warning of legal action but never bringing suit—that the Declaratory Judgment Act sought to prevent. But threats of legal action, alone, cannot create an actual controversy under the Declaratory Judgment Act. *Scholle Corp. v. Blackhawk Molding Co., Inc.*, 133 F.3d 1469, 1472 n.1 (Fed. Cir. 1998). Vantage must still demonstrate that the controversy was sufficiently immediate and real.

Trademarks protect only decorative, nonfunctional elements intended to reveal the origin of the product. *Wilhelm Pudenz, GmbH v. Littlefuse, Inc.*, 177 F.3d 1204, 1207 (11th Cir. 1999) ("[N]o trademark rights may be claimed in a product's functional shapes or features."). To the extent that Beall's trailer appearance is functional, perhaps cheaper to manufacture or more aerodynamic in operation, then it will likely receive no trademark protection. *See Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 356 (5th Cir. 2002) ("[T]he primary test for determining whether a product feature is functional is whether the feature is essential to the use or purpose of the product or whether it affects the cost or quality of the product."). Whether Beall's rather

generic depiction of its trailer design fulfills the criteria for trademark protection is not obvious.

For these reasons, Vantage has failed to meet its burden to show that its design was substantially fixed as to the potentially infringing elements, *i.e.*, the appearance of the trailers, at the time of suit, or that its suit embraced a real and immediate controversy with Beall. The district court correctly held that it lacked subject matter jurisdiction over Vantage's declaratory judgment claim.

## B. Unfair Competition

In addition to seeking a declaratory judgment regarding the trademark, Vantage sought injunctive relief in a claim for unfair competition: "Defendant's assertion of a right to prohibit Plaintiff from making, using or selling a bottom dump trailer having features depicted in Defendant's alleged Mark is an act of unfair competition."[2] The dismissal of the trademark declaratory judgment claim requires dismissal of this claim as well. Vantage "cannot bootstrap itself into a decision on the validity claim by asserting secondary claims that necessarily depend on the resolution of the primary claim." *West Publishing Co.*, 882 F.2d at 177.

## IV. CONCLUSION

The judgment of the district is **AFFIRMED.**

---

[2] Oddly, Vantage argues that this claim encompassed Beall's assertion of a *patent* right in the Bullet. The district court accurately characterized Vantage's complaint as directed at Beall's assertion of trademark rights.