# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 21, 2013

No. 13-30094

Lyle W. Cayce
Clerk

DIAMOND YOUNG; ELIZABETH BALDWELL; JUDY BALDWELL; EARL KEITH BARDWELL; EDWARD BIGNER, SR.; ET AL,

Plaintiffs - Appellants

v.

UNITED STATES OF AMERICA,

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before STEWART, Chief Judge, and DAVIS and WIENER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiffs-Appellants ("plaintiffs") are landowners who seek damages from the United States ("the government") under the Federal Tort Claims Act ("FTCA") for its role in the design, construction, and maintenance of a portion of a highway that, plaintiffs allege, prevents sufficient drainage during periods of heavy rainfall. The district court dismissed plaintiffs' action for lack of jurisdiction after determining that they had filed their claims after the FTCA's limitations period had expired. On appeal, plaintiffs contend that the court erred when it declined to apply Louisiana's continuing-tort doctrine to delay

No. 13-30094

commencement of the running of the FTCA's two-year limitations period. We affirm.

## I.  FACTS AND PROCEEDINGS

Plaintiffs are homeowners and business owners in the watershed of the Tangipahoa River, north of Interstate 12 in Tangipahoa Parish, Louisiana. They allege that the United States Geographical Survey ("USGS"), a bureau of the United States Department of the Interior ("DOI"), failed to exercise reasonable care in conducting a hydrology study and a bridge hydrolics study in the early 1960s for use by the Louisiana Department of Transportation ("LDOT") in constructing Interstate 12.  The USGS technicians who conducted the studies allegedly underestimated the potential for significant flooding and ignored other pertinent details.  Interstate 12 was built in accordance with the USGS's design, and the design deficiencies allegedly resulted in a river crossing that fails to allow a sufficient flow of water during periods of extremely heavy rainfall.  In such cases, the rain water backs up, creating the potential for flooding of nearby properties.

The last incident of significant flooding occurred in April 1983, when backwater inundated the properties of some upstream landowners, including the plaintiffs in this action.[1]  Plaintiffs were among the members of a class that prevailed in a suit against the State of Louisiana following that 1983 flood. Although the state court awarded substantial damages, Louisiana has never paid that award.

Unable to collect from the State, plaintiffs turned their attention to the federal treasury, filing administrative claims in February 2008 with the DOI under the FTCA for damages caused by USGS's negligence in preparing the two

---

[1]  According to plaintiffs' expert, rain events of this magnitude are expected in the Tangipahoa River basin about once every twenty years, but thirty years have now passed without a recurrence.

reports at issue which contributed to the faulty design. The DOI denied those claims—in part, because they had been filed outside the two-year FTCA limitations period.

Plaintiffs then sued the government in the Eastern District of Louisiana. The government responded with a motion to dismiss for lack of jurisdiction, asserting that plaintiffs' failure to submit their administrative claims within the FTCA limitations period left the district court without subject matter jurisdiction. Plaintiffs opposed that motion, contending that (1) they only learned of the USGS's potential liability years after the flood and no more than two years before presenting their claims to the DOI, and (2) irrespective of the discovery date, the government's ongoing maintenance of the improperly designed highway is a continuing tort that keeps the FTCA limitations period from starting to run for as long as the damage continues to occur.

The district court recognized that the Fifth Circuit has not yet decided whether a continuing tort under state law may postpone commencement of the limitations period on a corresponding FTCA claim. The court declined to speculate, however, and held instead that the facts alleged did not constitute a continuing tort under Louisiana law; thus, the FTCA limitations period began to run when plaintiffs learned of the government's involvement in the design of the highway. This discovery, ruled the court, preceded plaintiffs' filing of their administrative claims by more than two years, precluding the court from adjudicating their subsequently filed federal action. The court therefore dismissed plaintiffs' action and entered judgment for the government.

On appeal, plaintiffs do not challenge the court's finding of the date of their discovery. They do, however, reassert their contention that their complaint alleged a continuing tort which delayed commencement of the running of the FTCA's limitations period. As such, plaintiffs contend, their FTCA claims are not time-barred.

No. 13-30094

## II. STANDARD OF REVIEW

"When addressing a dismissal for lack of subject matter jurisdiction, we review application of law de novo and disputed factual findings for clear error."[2] The party asserting jurisdiction—here, the plaintiffs—must prove by a preponderance of the evidence that jurisdiction exists.[3]

## III. ANALYSIS

### A. The FTCA Limitations Period

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."[4] Federal courts have jurisdiction to hear suits against the government only with "a clear statement from the United States waiving sovereign immunity, together with a claim falling within the terms of the waiver."[5] The FTCA provides that waiver, but only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."[6] As the tortious acts alleged in this case occurred in Louisiana, plaintiffs may sue the government if Louisiana law would impose tort liability on a private person for the wrongs alleged.

Before suing under the FTCA, however, plaintiffs first had to exhaust their remedies with the DOI within two years of the date on which their FTCA claims

---

[2] *Alexander v. United States (In re Fema Trailer Formaldehyde Prods. Liab. Litig.)*, 646 F.3d 185, 189 (5th Cir. 2011).

[3] *Id.*; *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009).

[4] *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

[5] *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citations omitted); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996) (noting that the waiver may not be implied, but "must be unequivocally expressed in statutory text").

[6] 28 U.S.C. § 1346(b)(1).

accrued.[7] As "limitations periods in statutes waiving sovereign immunity are jurisdictional,"[8] plaintiffs' failure to file their claims timely before the DOI would preclude a federal court from thereafter hearing those claims. The parties agree that we define accrual in this case according to *federal* law, asking "when the plaintiff[s] discover[ed], or, in the exercise of reasonable diligence should have discovered, the fact of the injury and its cause."[9] Although several federal courts have addressed whether *state* law may indefinitely postpone the commencement of the running of prescription when the wrongful acts and damages are ongoing,[10] that question remains open in this circuit.[11] We do not reach it today, however, as we conclude that the tortious acts that plaintiffs allege do not constitute a continuing tort under Louisiana law.

## B. Louisiana's Continuing-Tort Doctrine

For the purpose of determining when prescription starts to run, Louisiana distinguishes between injuries resulting from continuous operating causes and

---

[7] *See* 28 U.S.C. §§ 2401(b), 2675.

[8] *In re Fema Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d at 190 (citing *Ramming v. United States*, 281 F.3d 158, 165 (5th Cir. 2001)).

[9] *Bush v. United States*, 823 F.2d 909, 911 (5th Cir. 1987).

[10] *See, e.g., Hoery v. United States*, 324 F.3d 1220, 1223-24 (10th Cir. 2003); *Arcade Water Dist. v. United States*, 940 F.2d 1265, 1269 (9th Cir. 1991); *Gross v. United States*, 676 F.2d 295, 300 (8th Cir. 1982); *Kennedy v. United States*, 643 F. Supp. 1072, 1079 (E.D.N.Y. 1986).

[11] *See In re Fema Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d at 189 (evading the question whether a state's continuing-tort doctrine may delay accrual of an FTCA claim and noting only that the plaintiff "ha[d] not cited any Fifth Circuit caselaw indicating that accrual should be delayed when the plaintiff knows about the injury and could have discovered, with a reasonable inquiry, the . . . Government's[] potential liability").

those that result from discontinuous operating causes. In *Hogg v. Chevron USA, Inc.*,[12] the Louisiana Supreme Court stressed this point:

> When the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage. When the operating cause of the injury is discontinuous, there is a multiplicity of causes of action and of corresponding prescriptive periods.[13]

Thus, whether the government's alleged negligence would be a continuing tort is, in part, "a conduct-based [inquiry, with the court] asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts."[14] In *Hogg*, the court was building on its earlier statement in *Crump v. Sabine River Authority*[15] that "a continuing tort is occasioned by [continuing] unlawful acts, not the continuation of the ill effects of an original, wrongful act."[16] In any case, it is clear that both the injury *and* the wrongful conduct that caused it must be continuous.[17]

---

[12] 45 So. 3d 991 (La. 2010).

[13] *Id.* at 1003 (citations omitted) (quoting Official Revision Comments (c) to LA. CIV. CODE art. 3493 (1983)).

[14] *Id.* at 1003.

[15] 737 So. 2d 720 (La. 1999).

[16] *Id.* at 728.

[17] *See Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 323 (5th Cir. 2002) ("For a continuing tort to exist [under Louisiana law] . . . there must generally be continuing wrongful conduct, coupled with continuing damage."); *Roberts v. Murphy Oil*, 577 So.2d 308, 311 (La. App. 4th Cir. 1991) ("[T]he doctrine of continuing tort applies only when both the alleged wrongful act and the damages caused by it are continuous.") (citing *S. Cent. Bell Tel. Co. v. Texaco, Inc.*, 418 So. 2d 531 (La. 1982)); FRANK L. MARAIST AND THOMAS C. GALLIGAN, 1-10 LOUISIANA TORT LAW § 10.04 (2012) ("[I]f *both the tortious conduct and the damages continue*, the tort may be deemed a 'continuing' one and prescription may not begin to run until the wrongful conduct ceases.") (emphasis added).

No. 13-30094

We are guided primarily by those two Louisiana Supreme Court opinions, which delineate the contours of Louisiana's continuing-tort doctrine. In *Hogg*, the plaintiffs' land was contaminated by the migration of gasoline from formerly leaking underground storage tanks located on neighboring property. At the time of the suit, the leaked gasoline remained on the plaintiffs' property, but the operating cause of the contamination had abated ten years earlier when the leaking tanks were removed.[18] The *Hogg* plaintiffs contended that the presence of the gasoline on their property constituted a continuing trespass, so that prescription would not begin to run until the gasoline was removed.[19] The Louisiana Supreme Court disagreed, holding that the operating cause of the plaintiffs' injuries was the leaking underground storage tanks, and that prescription began to run when the tanks were removed and the leaking stopped.[20] The court also rejected the plaintiffs' contention that the failure to contain or remediate the leakage constituted a continuing wrong, suspending the commencement of the running of prescription. Citing *Crump*, the court explained that "the breach of a duty to right an initial wrong simply cannot be a continuing wrong that suspends the running of prescription, as that is the purpose of every lawsuit and the obligation of every tortfeasor."[21]

*Crump*, too, is illustrative. There, the plaintiff contended that a canal built on neighboring property caused an ox-bow portion of a bayou on her land

---

[18]  45 So. 3d at 995.

[19]  *Id.* at 1002.

[20]  *Id.* at 1004-06; *see also Marin v. Exxon Mobil Corp.*, 48 So. 3d 234, 253-55 (La. 2010) (oilfield waste was deposited into unlined pits and migrated onto plaintiffs' property over time; court found no continuing tort because the tortious conduct ceased when the pits were closed more than a decade before plaintiffs filed suit).

[21]  *Hogg*, 45 So. 3d at 1007 (citing *Crump*, 737 So. 2d at 729).

7

to dry up, depriving her of access through the bayou to a nearby lake.[22]  The Louisiana Supreme Court held that the continued presence of the canal was not a continuing tort: "[T]he actual digging of the canal was the operating cause of the injury[, and t]he continued presence of the canal and the consequent diversion of water from the ox-bow [were] simply the *continuing ill effects* arising from a single tortious act."[23]  Refusing to suspend the running of prescription, the court concluded that plaintiff's negligence action had prescribed before she filed suit.[24]

Taking direction from *Hogg* and *Crump*, we conclude that the operating cause of the damage alleged in this case was the USGS's furnishing of the two allegedly negligent reports which resulted in a highway design that did not allow sufficient flow of water during periods of heavy rainfall.  The USGS's conduct was not perpetuated through overt, persistent, and ongoing acts: Its only involvement with the Tangipahoa River crossing (at least of which plaintiffs have made us aware) ended *forty years* before plaintiffs filed suit.  And, to the extent that federal maintenance of the I-12 highway could be considered a "continuing" series of acts, such maintenance is not "wrongful,"[25] and does not continue to harm plaintiffs.  Unlike the wrongful acts in *Cooper v. Louisiana Department of Public Works*[26]—the only Louisiana case that plaintiffs cite for

---

[22] *Crump*, 737 So. 2d at 723.

[23] *Id.* at 727-728 (emphasis added).

[24] *Id.* at 731.

[25] *See, e.g.*, *id.* at 728 (assuming, *arguendo*, that the defendant owed the plaintiff a duty not to dig the canal, and concluding that this duty was breached only during the time that the digging occurred).

[26] 870 So. 2d 315 (La. App. 3rd Cir. 2004).  In *Cooper*, plaintiffs sued the state after its construction of locks and dams interfered with their servitudes of drainage and caused *permanent* flooding to their lands.  *Id.* at 319-20.  Analogizing to other cases in which "courts held that debris and other objects placed on another's property constituted a continuing

support—the harm occasioned by the wrongful acts here ended when the flooding subsided, decades before plaintiffs sued under the FTCA. Case law from both Louisiana[27] and federal[28] courts supports the district court's conclusion that plaintiffs have not alleged a continuing tort under Louisiana law. As we agree, we hold that plaintiffs' claims accrued, and the FTCA's two-year limitations period expired, long before plaintiffs brought their claims before the DOI. The district court correctly found itself without jurisdiction and correctly dismissed accordingly.

## IV. CONCLUSION

As plaintiffs have not been aggrieved by a Louisiana continuing tort, they have failed to bear their burden of proving subject matter jurisdiction. We therefore affirm the district court and leave for another day and another case the question whether, by continuing the accrual of a claim brought under the FTCA, a continuing tort may delay the commencement of that statute's limitations period.

---

trespass"—cases in which "prescription did not run until the trespass was abated"—the *Cooper* court held that prescription would not run until the flooding had subsided. Here, and unlike in *Cooper*, there has been no permanent flooding or any alleged drainage-related damage in the thirty years since the 1983 flood. The support that *Cooper* finds in Louisiana trespass cases does nothing to help plaintiffs here.

[27] *See Pracht v. City of Shreveport*, 830 So. 2d 546, 550-51 (La. App. 2d Cir. 2002) (concluding that separate instances of flooding caused by the negligent maintenance of a drainage canal did not constitute a continuing tort); *Roberts*, 577 So. 2d at 311 ("[R]epeated instances of flooding caused by the negligent alteration of drainage are separate and distinct events which do not serve to interrupt prescription.").

[28] *See Delaney v. Union Pac. R.R. Co.*, 2011 U.S. Dist. LEXIS 22076, *9-10 (E.D. La. Mar. 4, 2011) (finding Louisiana's continuing-tort doctrine inapplicable, as railroad's negligent design and maintenance of a drainage ditch and culverts were not "overt, persistent and ongoing acts[,]" and the resulting instances of flooding were "merely the ill effects of the original, allegedly wrongful act").