# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-31013

United States Court of Appeals
Fifth Circuit

**FILED**

June 19, 2014

Lyle W. Cayce
Clerk

CAMSOFT DATA SYSTEMS, INC.,

Plaintiff - Appellee-Cross-Appellant

v.

SOUTHERN ELECTRONICS SUPPLY, INCORPORATED; ACTIVE
SOLUTIONS, L.L.C.; BRIAN FITZPATRICK; HENRY J. BURKHARDT;
IGNACE PERRIN,

Defendants - Third Party Plaintiffs
- Appellants-Cross-Appellees

DELL, INCORPORATED; CIBER, INCORPORATED; DELL MARKETING,
L.P.; MARK KURT,

Defendants - Appellants - Cross-
Appellees

STEVE RENECKER; BILLY RIDGE; HEATHER SMITH; BILL TOLPEGIN;
DONALD BERRYMAN; EARTHLINK, INCORPORATED; MOTOROLA,
INCORPORATED; MMR CONSTRUCTORS, INCORPORATED, doing
business as MMR COMMUNICATIONS,

Defendants - Cross-Appellees

v.

ZURICH AMERICAN INSURANCE COMPANY; AMERICAN ZURICH
INSURANCE COMPANY; CONTINENTAL CASUALTY COMPANY,

Third Party Defendants -
Appellants-Cross-Appellees

No. 12-31013

Appeals from the United States District Court
for the Middle District of Louisiana

---

Before BENAVIDES, CLEMENT, and GRAVES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Before the court is the appeal of a district court's decision not to exercise supplemental jurisdiction over the case. Defendants-Appellants argue that the court erred in remanding the case to state court. Plaintiff-Appellee moves to dismiss the case, arguing that removal was improper and that we lack jurisdiction to review the remand order. An untimely cross-appeal raises various issues regarding several court orders.

The central issue in this case is whether a district court has jurisdiction over an inventorship dispute where the contested patent has not yet issued. The case was removed from Louisiana court pursuant to 28 U.S.C. §§ 1331, 1338(a), 1441(a) (2006). The parties stipulate that the only possible basis for removal was an inventorship assertion implicit in the plaintiff's ownership claim under articles 513 and 514 of the Louisiana Civil Code. After reviewing the case, we conclude that the controversy must be remanded to the state. Regardless of whether the removed complaint included an inventorship dispute, that dispute was inadequate to establish the district court's jurisdiction because the allegations indicated that no patent had issued. And by raising a timely objection to removal, the plaintiff properly preserved its jurisdictional argument. Therefore, because removal was improper and the case has not yet been tried on the merits, binding precedent dictates that we remand the case to state court. We thus affirm the district court's remand order as amended. Plaintiff's motion and cross-appeal are dismissed for the reasons stated herein.

**I. Background**

2

No. 12-31013

The present case relates to an ongoing controversy regarding a wireless urban surveillance system installed in New Orleans beginning in 2005. Prior to the implementation of that system, Camsoft Data Systems, Inc., had worked with two defendants[1]—Active Solutions, L.L.C., and Southern Electronics Supply, Inc.—on a pilot project involving wireless surveillance cameras. Southern Electronics then entered into a contract with the City of New Orleans to install the system at issue here. Camsoft was not party to that contract, nor did it have a written agreement with Active Solutions or Southern Electronics. There was, however, allegedly an understanding that Camsoft technology and labor would be used in conjunction with the project. Ultimately, Camsoft did not participate in the implementation of the system, which was mired in political scandal after reports revealed that certain officials may have accepted kickbacks during the municipal bidding process.

Extensive civil and criminal litigation resulted, with Active Solutions and Southern Electronics winning a $12 million dollar jury award from technology vendors and the city's chief technology officer.[2] After unsuccessfully attempting to intervene in that suit, Camsoft filed the present action against Active Solutions and Southern Electronics in Louisiana court in September of 2009, alleging various claims afforded by state statutory and common law. Camsoft claimed, *inter alia*, to have "invented" and "developed" the disputed system, which it alleged was the subject of a pending patent application. Pursuant to articles 513 and 514 of the Louisiana Civil Code, Camsoft sought judgment declaring its rightful ownership of the surveillance system and any "intellectual property" arising out of work performed in

---

[1] Camsoft currently names 20 defendants. The twelve parties who filed this appeal (see caption) are collectively referred to as "Defendants-Appellants" or "Appellants."

[2] *Active Solutions, L.L.C. v. Dell, Inc.*, No. 2007-3665, Div. "B", Civil District Court for the Parish of New Orleans, State of Louisiana (unpublished).

3

conjunction with Active Solutions and Southern Electronics.  Camsoft then amended the complaint, pleading additional claims and naming seventeen more defendants.

On December 14, 2009, the case was removed on the basis of federal question jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) (2006).  Camsoft vigorously opposed removal and moved to remand, but the district court found that the allegations of inventorship necessarily invoked patent law and gave rise to jurisdiction.[3]  After unsuccessfully challenging the removal, Camsoft further amended the complaint, adding over a dozen additional defendants and emphasizing a joint ventureship—rather than inventorship—as the basis for ownership.  Camsoft also added federal anti-trust and racketeering claims. *See, respectively*, Sherman Act, 15 U.S.C. § 1 *et seq*.; Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968.  Camsoft later elaborated on these federal claims in a third amended complaint.

The district court presided over the case for over three years, adjudicating various dispositive motions and ultimately dismissing several claims with prejudice.  The court found that Camsoft had failed to adequately plead several of its state claims, resulting in dismissal under Rule 12(b)(6).  In addition, the court dismissed the federal anti-trust and racketeering claims, finding that Camsoft had no standing under the governing statutes.  The court also granted a defendant's motion for summary judgment on the issue of joint ventureship, which served as the foundation for most of Camsoft's remaining state claims.  The court later denied Camsoft's motion to certify these dismissal orders as final judgments for interlocutory appeal.

---

[3] *Camsoft Data Sys., Inc. v. S. Elecs. Supply Inc.*, No. 09-1047-C, 2010 WL 763508 (M.D. La. March 4, 2010) (unpublished).

Most recently, after Camsoft moved to file a fourth amended complaint and to recuse the judge, the district court remanded the case by *sua sponte* declining to exercise supplemental jurisdiction over remaining claims.[4] When some of the defendants appealed the remand to the Federal Circuit, Camsoft cross-appealed, seeking review of every adverse decision. Camsoft later filed a motion to dismiss, arguing that jurisdiction never existed, or, in the alternative, that the court lacked jurisdiction to review the remand. After requesting briefs on the question of jurisdiction, the Federal Circuit transferred the appeal to this court.[5] We now consider the parties' arguments.

## II. Appellate Jurisdiction

Camsoft moves to dismiss this case for lack of appellate jurisdiction, arguing that this court has no authority to review the remand order. This court has jurisdiction to review a remand order unless the case was remanded for lack of subject matter jurisdiction or a defect in removal procedure. 28 U.S.C. §§ 1447(c), (d); *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 637 (2009). Where a district court simply declines to exercise supplemental jurisdiction over a case, the court's decision is not jurisdictional. *Carlsbad*, 556 U.S. at 637. A district court may decline supplemental jurisdiction where: (1) a state claim raises a novel or complex issue of state law; (2) the state claims substantially predominate over any remaining federal claims; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). In the present case, after dismissing Camsoft's RICO and anti-trust claims, the district court ordered briefs outlining the parties and claims that

---

[4] *Camsoft Data Sys., Inc. v. S. Elecs. Supply Inc.*, No. 09-1047-C (M.D. La. Sept. 28, 2012) (unpublished).

[5] *Camsoft Data Sys., Inc. v. S. Elecs. Supply Inc.*, No. 2013-1016 (Fed. Cir. May 31, 2013) (unpublished).

remained at bar.   When the briefs revealed that the patent issue had apparently been abandoned and that the federal claims had been dismissed, the court carefully weighed each statutory factor and then decided not to exercise supplemental jurisdiction over remaining claims.   There is no indication that the court was remanding for lack of jurisdiction.   Accordingly, we have jurisdiction to review the order.

Camsoft nevertheless contends that the court effectively remanded for lack of jurisdiction because the federal claims were dismissed under Rule 12(b)(1).   *See* Fed. R. Civ. P. 12(b)(1) (allowing dismissal for lack of subject matter jurisdiction).   This argument is without merit.   The district court dismissed Camsoft's federal claims after finding that Camsoft had no standing under the respective governing statutes.   The court presumed the lack of statutory standing to be a jurisdictional defect and dismissed under 12(b)(1).   Yet statutory standing is not indicative of Article III jurisdictional standing. *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011).   In fact, we have emphasized that "whether or not a particular cause of action authorizes an injured plaintiff to sue is a merits question . . . not a jurisdictional question."   *Blanchard 1986, Ltd. v. Park Plantation, LLC*, 553 F.3d 405, 409 (5th Cir. 2008).   As a consequence, to the extent that statutory standing was lacking, the federal claims should have been dismissed under Rule 12(b)(6) rather than for lack of jurisdiction.   *Id.*

Our jurisdiction exists notwithstanding the Federal Circuit's decision not to entertain the present appeal.   The Federal Circuit has exclusive jurisdiction over any appeal where the district court's "jurisdiction was based, in whole or in part, on 28 U.S.C. § 1338," which confers jurisdiction where

claims "arise under" the patent laws.[6]   Camsoft points out that removal jurisdiction was solely predicated upon the existence of a question of patent law.  Camsoft assumes, then, that because the Federal Circuit found no patent question on appeal,[7] there must be no basis for federal appellate jurisdiction. Camsoft is mistaken.

"This court necessarily has the inherent jurisdiction to determine its own jurisdiction."  *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 290 (5th Cir. 1997).  We also have jurisdiction to evaluate district court jurisdiction.  *See Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012).  This is true even where the asserted jurisdiction arises from patent law.  *Scherbatskoy*, 125 F.3d at 290. The issues before this court are not questions of patent law such that the appeal must be adjudicated by the Federal Circuit.  Instead, the parties dispute the existence of jurisdiction over a complaint that allegedly implicates patent law.   Accordingly, we may entertain the appeal.   This conclusion is not inconsistent with the Federal Circuit's order.  If that court had found a lack of appellate jurisdiction, it would have remanded to the district court instead of transferring the appeal to this circuit.

Camsoft's motion to dismiss is therefore denied.   Insofar as Camsoft's motion raises any arguments not addressed by the foregoing discussion, those arguments are rendered moot in light of the remainder of this opinion.  *See ITL*

---

[6] 28 U.S.C. § 1295(a)(1) (2006); *see also id.* §§ 1331, 1338 (2006).  Sections 1295 and 1338 were amended by the America Invents Act, Pub. L. No. 112–29, § 19, 125 Stat. 284, 331–32 (2011).  Because that amendment does not affect suits filed prior to September 16, 2011, all references are to the previous text. *See id.* § 19(e), 125 Stat. at 333.

[7] The Federal Circuit's order reads:

> This court lacks subject matter jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1).  *See HIF Bio, Inc. v. Yung Shin Pharma. Indus. Co.*, 600 F.3d 1347 (Fed. Cir. 2010).  Accordingly, this case is hereby transferred to the United States Court of Appeals for the Fifth Circuit.  This court does not decide whether there is any reviewable order, leaving that question to the Fifth Circuit.

*Camsoft*, No. 2013-1016, at 1.

*Int'l, Inc. v. Constenia, S.A.*, 669 F.3d 493, 501 (5th Cir. 2012) (dismissing ancillary motion as moot after finding district court lacked jurisdiction over claims).

## III. Removal

Before reviewing the contested remand, we consider whether removal was proper in the first place. All issues of subject matter jurisdiction are questions of law that this court reviews *de novo*. *Oviedo v. Hallbauer*, 655 F.3d 419, 422 (5th Cir. 2011). Any underlying findings of fact are subject to review for clear error. *Young v. United States*, 727 F.3d 444, 446 (5th Cir. 2013). A case originating in state court may be removed where the district court has original jurisdiction over any claim. 28 U.S.C. § 1441(a). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." *Id*. § 1447(c). The parties stipulate that the only possible basis for jurisdiction at removal was an inventorship assertion implicit in Camsoft's ownership claim. After reviewing the removed complaint and relevant law, we conclude that regardless of whether Camsoft asserted a theory of inventorship, removal was improper because district courts have no jurisdiction over an inventorship dispute until the disputed patent has issued.

As a threshold matter, the parties disagree as to whether we should even entertain Camsoft's objections to removal. After unsuccessfully contesting removal, Camsoft seemingly resigned itself to its jurisdictional fate by amending its complaint to include federal anti-trust and RICO claims. Appellants ask this court to hold that Camsoft waived its jurisdictional arguments by voluntarily pleading these causes of action. We have indeed held that "[w]here the disgruntled party takes full advantage of the federal forum and then objects to removal *only after losing at the district court level*, that party has waived all objections to removal jurisdiction." *Kidd v. Sw. Airlines,*

No. 12-31013

*Co.*, 891 F.2d 540, 546 (5th Cir. 1990) (emphasis added).  Yet where—as here—a plaintiff objects to jurisdiction at removal, that plaintiff does not waive her jurisdictional arguments via post-removal amendment to her complaint. *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 74 (1996).  Instead, "by timely moving for remand, [Camsoft] did all that was required to preserve [its] objection to removal." *Id.*

Camsoft's objection having been properly preserved, we now turn to the merits of its argument.  District courts have original jurisdiction over any civil action arising under patent law.  28 U.S.C. §§ 1331, 1338(a).  This jurisdiction, however, extends "only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal patent law." *HIF Bio*, 600 F.3d at 1352 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808–09 (1988)).  Inventorship is an issue "unique" to federal patent law, and raises a substantial question thereof. *Id.* at 1352–53.

The district court lacked removal jurisdiction because inventorship served as the only possible basis for removal, and Camsoft's complaint did not allege that a patent had issued.  At the time of removal, the district court noted the complaint's lack of specificity with respect to the disputed patent.  Camsoft's complaint clearly alleged that Active Solutions or Southern Electronics had tried to patent the surveillance technology and had falsely claimed sole inventorship.  Yet the court was unable to ascertain the status of the patent application.  In fact, Camsoft had "no proof that the Active Defendants [had] even filed a patent application" at all.[8]  Nevertheless,

---

[8] *Camsoft*, 2010 WL 763508, at *3 n.14.  "Active Defendants" was the court's short-hand method of referring to both Active Solutions and Southern Electronics, as well as certain employees of those entities. *See id.* at *1.

because the complaint clearly referred to a pending patent, and because neither Active Solutions nor Southern Electronics denied applying for a patent, the district court analyzed jurisdiction under the assumption that an application was pending. At oral argument before this court, the parties indicated that an application had been filed but that no patent had issued.[9]

The federal courts have no authority to adjudicate inventorship with respect to pending patents. Congress has explicitly vested the Patent and Trademark Office with sole discretion over the "granting and issuing of patents." 35 U.S.C. § 2(a)(1). Where an inventorship dispute involves a pending patent application, an assertion of inventorship is "tantamount to a request for either a modification of inventorship on pending patent applications or [to] an interference proceeding." *HIF Bio*, 600 F.3d at 1353 (referring to 35 U.S.C. § 116(c), which allows for modification of application, and *id.* § 135, which establishes interference proceedings).[10] A request for application modification must be adjudicated by the Director of Patent and Trademark Office:

> Whenever through error a person is named in an application for patent as the inventor, or through error an inventor is not named in an application, and such error arose without any deceptive intention on his part, the Director may permit the application to be amended accordingly, under such terms as he prescribes.

35 U.S.C. § 116(c). Similarly, where the disputed patent application interferes with another inventor's existing patent or application, the alleged interference

---

[9] Even now, the record appears devoid of any indication that the application existed.

[10] 35 U.S.C. §§ 116, 135, and 256 were amended by The America Invents Act, Pub. L. No. 112–29, 125 Stat. 284 *et seq.* (2011). *See, respectively*, § 20(a), 125 Stat. 333; §3(i), 125 Stat. 289–90; § 20(f), 125 Stat. 334. Interference proceedings, for example, have been replaced by "derivation proceedings." *See* 35 U.S.C. § 135 (2012). The Act and any subsequent amendments do not apply to the present case, so we analyze the earlier text here. Nevertheless, a review of the amended statutory sections reveals that the Patent and Trademark Office still retains jurisdiction over disputed inventorship with respect to pending patents, for essentially the reasons stated herein.

must be submitted to the Director such that "[t]he Board of Patent Appeals and Interferences shall determine questions of priority of the inventions and may determine questions of patentability."[11]

Congress then explained the role of the courts in adjudicating contested inventorship:

> Whenever through error a person is named in *an issued patent* as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part . . . [t]he court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

*Id.* § 256 (emphasis added). As the Federal Circuit has observed, Congress has thereby "limited the avenues" by which a plaintiff may contest inventorship in the federal courts. *HIF Bio*, 600 F.3d at 1353. We conclude from these statutory sections that only the Director of the Patent and Trademark Office has jurisdiction to entertain arguments regarding inventorship with respect to patents that have not yet issued. The sections that refer to unissued patents make no mention of courts at all. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation omitted) (alteration original). Consequently, a "district court lack[s] jurisdiction to review the inventorship of an unissued patent." *E.I. Du Pont de Nemours & Co. v. Okuley*, 344 F.3d 578, 584 (6th Cir. 2003).

Admittedly, it seems paradoxical that disputed inventorship is exclusively a question of federal law and yet sometimes fails to imbue the

---

[11] 35 U.S.C. § 135 (2006). The America Invents Act replaced interference hearings with derivation proceedings. *See supra* note 10.

district courts with federal question jurisdiction. Yet such a scenario is hardly unusual. There are many federal questions whose jurisdiction has been vested outside the district courts. Citizenship and naturalization, for example, are exclusively issues of federal law. *See* U.S. Const. art. I., § 8. Nevertheless, the federal courts have no jurisdiction over immigration disputes until those issues have been adjudicated by an immigration judge and the Board of Immigration Appeals. In fact, the district courts generally have no jurisdiction over removal orders at all. *See* 8 U.S.C. § 1252(a)(5) (2012) (establishing the courts of appeals as the "exclusive means of judicial review"). Similarly, "collective bargaining agreement disputes raise a question arising under federal law." *Oakey v. U.S. Airways Pilots Disability Income Plan*, 723 F.3d 227, 238 (D.C. Cir. 2013) (quoting *Emswiler v. CSX Transp., Inc.*, 691 F.3d 782, 789 (6th Cir. 2012)) (internal quotation marks omitted). Even so, Congress has "expressly and unequivocally consign[ed]" certain disputes—such as those arising under the Railroad Labor Act—"to the appropriate adjustment board, with no mention of federal court jurisdiction." *Id.* (punctuation revised). As a consequence, when such matters are brought before the district court, the court must dismiss under Rule 12(b)(1). *Id.* Similarly, and notwithstanding the inherently federal nature of inventorship, district courts must dismiss premature questions of inventorship for lack of jurisdiction.

We recognize the lack of judicial consensus as to this issue. *Compare HIF Bio, Inc.*, 600 F.3d 1347 (the Federal Circuit finding jurisdiction), *with Okuley*, 344 F.3d 578 (the Sixth Circuit finding none). The Federal Circuit has held that inventorship disputes regarding pending patents give rise to subject matter jurisdiction. *HIF Bio, Inc.*, 600 F.3d at 1353. In *HIF Bio*, that court considered a removed complaint in which the plaintiffs sought a declaration that they were the "true" inventors of certain chemical compound. *Id.* at 1352. Noting that a patent had not issued at the time of removal, the court construed

the claim as an action under 35 U.S.C. § 116, which authorizes the Patent and Trademark Office to correct erroneous patent applications. *Id.* at 1353. The court further explained that § 116 "plainly does not create a cause of action in the district courts." *Id.* "Once a patent issues," however, "35 U.S.C. § 256 provides a private right of action to challenge inventorship and such a challenge arises under § 1338(a)." *Id.* at 1354. Without further explanation, the Federal Circuit concluded that the district courts therefore have jurisdiction over pre-patent inventorship disputes but must dismiss under Rule 12(b)(6) until a patent has issued such that a valid § 256 action might be brought. *Id.*

We respectfully disagree with our sister circuit's interpretation. There is no doubt that the district courts have jurisdiction to review the inventorship of patents pursuant to 35 U.S.C. § 256. That fact, however, does not establish jurisdiction over patent applications. It seems like splitting jurisdictional hairs to suggest that the federal courts entertain some kind of pending jurisdiction over a dispute whose immediate resolution Congress delegated to another forum. Moreover, to conceive of a prospective patent as an eventual issued patent is to focus on a dispute that might someday exist at the expense of the dispute immediately before the court. Yet federal courts only have jurisdiction over live cases and controversies that are "definite and concrete, not hypothetical." *Cross v. Lucius*, 713 F.2d 153, 158–59 (5th Cir. 1983). Indeed, it is well settled that the federal courts have no jurisdiction over claims that "rest[] upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations and internal quotation marks omitted). As a consequence, we are unable to establish jurisdiction based on the theory that a disputed pending patent might eventually ripen into a patent controversy that Congress has authorized the federal courts to adjudicate. We hold, therefore, that until a

No. 12-31013

patent has actually issued, any questions of inventorship are not justiciable outside of the Patent and Trademark Office.  Consequently, removal was not proper and the case should have been remanded in response to Camsoft's timely motion.  28 U.S.C. § 1447(c).

**IV. Remand**

Our analysis does not end with the improper removal, however, because Appellants argue that the subsequently pleaded federal causes of action preclude remand.  This court is, of course, bound by its own precedent.  *United States v. Guanespen-Portillo*, 514 F.3d 393, 402 n.4 (5th Cir. 2008).  We do not generally recognize post-filing or post-removal amendment as cure for jurisdictional defect.  "Although 28 U.S.C. § 1653 and [Rule] 15(a) allow amendments to cure defective jurisdictional allegations, these rules do not permit the creation of jurisdiction when none existed at the time the original complaint was filed" or removed.  *Arena v. Graybar Elec. Co., Inc.*, 669 F.3d 214, 218 (5th Cir. 2012) (referring to Fed. R. Civ. P. 15(a)); *see also In re Katrina Canal Breaches Litig.*, 342 F. App'x 928, 931–32. (5th Cir. 2009) (unpublished) (collecting authorities).  Appellants nevertheless point to a well-established exception for cases in which removal was improper but the claims subsequently tried would otherwise give rise to subject matter jurisdiction.  In these cases, remand is not necessary because "considerations of finality, efficiency, and economy" prevail over the prior removal deficiency.  *Caterpillar*, 519 U.S. at 75.  Here, Camsoft's federal causes of action could have properly been brought in district court.  Yet because Camsoft's claims have not yet been tried on the merits, the case does not fall into the exception asserted by Appellants, and instead must be remanded to Louisiana.

In arguing for and against remand, both parties rely heavily on *Caterpillar, Inc. v. Lewis*, 519 U.S. 61 (1996).  *Caterpillar* involved state claims removed on the basis of diversity jurisdiction.  *Id.* at 64.  The plaintiff

vigorously opposed removal, but its motion to remand was denied. *Id.* Later, the undisputed facts indicated that diversity had not existed at the time of removal. *Id.* at 70. But prior to final judgment, the plaintiff had voluntarily settled with the sole non-diverse defendant, thereby creating the diversity necessary to give rise to federal jurisdiction. *Id.* at 64. After a jury returned a verdict in favor of the defendant, the plaintiff appealed on the ground that the district court had never entertained jurisdiction over the case. *Id.* at 66–67. After acknowledging that the jurisdictional challenge had been preserved and holding that removal had been improper, the Supreme Court explained that the removal defect was cured via the dismissal of the lone non-diverse defendant. *Id.* at 73. The Court then declined to remand for a new trial in state court, noting that where a removal defect has been cured and a case has proceeded to trial on the merits, "considerations of finality, efficiency, and economy" are "overwhelming." *Id.* at 75, 77–78.

So *Caterpillar* analysis involves three considerations: first, whether a meritorious removal challenge has been preserved; second, whether a post-removal development cured the defect that existed at removal; and third, whether the case was tried on the merits such that finality and economy preclude remand. *See Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 572 (2004) (explaining that whether the defect is cured and whether economy precludes remand are distinct inquiries). Remand is proper here because there has been no trial on the merits, as required by *Caterpillar*'s third analytical prong. Courts have long made an exception to the time-of-filing and time-of-removal jurisdictional rules for cases tried on the merits. *See Grubbs v. Gen. Elec. Credit Corp.*, 405 U.S. 699, 702–03 (1972) (tracing the distinction back to 1900). As the Supreme Court observed in *Grubbs*, "where after removal a case is *tried on the merits without objection* and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was

properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court [at the time of judgment]." *Id*. (emphasis added). The *Caterpillar* Court merely extended that rule by holding that even where a timely and meritorious objection was raised, remand is no longer necessary once the case has been tried on the merits. 519 U.S. at 77–78. Here, there has been no trial on the merits, so the case must be remanded.

Appellants disagree, arguing that the district court's Rule 12 dismissals are the functional equivalent of trial on the merits. This court, however, has already held that claim dismissal does not forestall remand under *Caterpillar*. *See Waste Control Specialists, L.L.C. v. Envirocare of Tex., Inc.*, 199 F.3d 781 (5th Cir. 2000), *opinion withdrawn and superseded in part*, 207 F.3d 225 (5th Cir. 2000) (superseding allocation of attorney's fees). In *Waste Control*, we relied on the Supreme Court's reasoning in *Caterpillar* to analyze facts similar to those of the instant case. The district court had allowed removal after erroneously concluding that federal anti-trust law preempted the plaintiff's claims. *Id*. at 782–84. After its motion to remand was denied, the plaintiff added a federal cause of action. But when the entire case was dismissed on a Rule 12(b)(6) motion, the plaintiff appealed, arguing that the case must be remanded because the district court never had jurisdiction over the case. *Id*. at 782–83. After finding that removal had been improper and that the jurisdictional argument had been preserved, we held that remand was not precluded by *Caterpillar*. *Id*. at 787. In reaching that conclusion, we emphasized that whereas *Caterpillar* had been tried to verdict, *Waste Control* involved "no trial on the merits." *Id*. at 786. Before instructing the district court to remand the case, we explicitly stated that *Caterpillar*'s reach "stops short of a Rule 12(b)(6) dismissal." *Id*. In fact, we are aware of no improperly removed case in which this court denied remand following a Rule 12 dismissal.

No. 12-31013

Appellants nevertheless contend that we once anticipated an untried case that had "remain[ed] in the federal court system for [such] a significant length of time" that "considerations of finality and economy [would] result in affirming a judgment." *McAteer v. Silverleaf Resorts, Inc.*, 514 F.3d 411, 416 (5th Cir. 2008). First of all, it is not clear exactly what the *McAteer* court intended with that comment, as that language was not explained and was not used to resolve the case. *Id.* That case—much like this one—involved the improper removal of claims that were later dismissed under Rule 12(b)(6). *Id.* at 414. On appeal from that dismissal, we vacated the dismissal and instructed the district court to remand to the state, notwithstanding the fact that a post-removal development resulted in a case that could have been filed in federal court. *Id.* at 416. So *McAteer* is not a particularly strong case for Appellants. On the contrary, it only serves to illustrate this court's consistent treatment of 12(b)(6) adjudication as insufficient to forestall an otherwise proper remand.

Regardless, to whatever extent *McAteer* implies that some improperly removed cases must remain in federal court based solely on considerations of finality and economy, we are not persuaded that this is such a case. There is no finality here, as this is an interlocutory appeal. In fact, the heart of this dispute—Camsoft's original breach of contract claim against Southern Electronics and Active Solutions—has not been adjudicated at all. Nor is there a prevailing economy interest in retaining the case. Although the case has been pending in the district court for several years, it was stayed twice due to ongoing litigation in state court. Consequently, relatively little progress has been made on the merits, and the potential loss of economy is not as significant as the timeline alone might suggest. And while Appellants argue that remand will result in four wasted years of litigation, the Supreme Court has expressly rejected such arguments. "When the stakes remain the same and the players have been shown each other's cards, they will not likely play the hand all the

way through just for the sake of the game." *Grupo Dataflux*, 541 U.S. at 581. The Court further reasoned that upon remand the case, "having been through [ ] years of discovery and pretrial motions, . . . would most likely proceed promptly to trial." *Id*. (punctuation revised).

In fact, due to the related cases, the Louisiana bench may be able to handle this litigation more efficiently than the federal court. The Louisiana courts have already presided over multiple cases involving the same parties and arising out of the same set of underlying facts, so the state court may be better positioned to efficiently discern the merits of Camsoft's allegations, which are based largely on facts already litigated. Indeed, the intensely local nature of this litigation only underscores the propriety of remand. After all, improper removal undermines federalism by depriving a sovereign state of the right to adjudicate its own cases and controversies. *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007). For that reason, this court resolves any jurisdictional doubt "in favor of remand." *Id*. at 281–82.

In any event, there is little doubt that remand will result in a certain degree of inconvenience. Yet we must respect the outer limit of our jurisdiction "regardless of the costs" imposed. *Grupo Dataflux*, 541 U.S. at 571. As one of our brothers observed, "the so-called 'waste' of judicial resources that occurs when we dismiss a case for lack of jurisdiction is the price that we pay for federalism." *Atlas Global Group, L.P. v. Grupo Dataflux*, 312 F.3d 168, 177 (5th Cir. 2002) (Emilio Garza, J., dissenting to cure of defective diversity removal, and anticipating the Supreme Court's eventual reversal). In *Grupo Dataflux*, the Supreme Court cautioned this court against creating new jurisdictional exceptions for the sake of immediate judicial economy. 541 U.S. at 580–81. We had established a new rule whereby defective diversity jurisdiction is cured when a lone non-diverse party establishes new citizenship. 312 F.3d at 171 (majority opinion). The Supreme Court rejected the rule,

explaining that even a significant investment of judicial resources will not preclude an otherwise proper remand.  541 U.S. at 571, 577–78.  The Court further emphasized the short-sightedness of establishing a new jurisdictional exception for the sake of a case immediately at bar: "the policy goal of minimizing litigation over jurisdiction is thwarted whenever a new exception to the time-of-filing rule is announced."  *Id.* at 580–81.  Consequently, rules introduced to avoid immediate jurisdictional implications serve only to undermine judicial economy rather than to facilitate it.

Returning to the case at hand, Appellants propose a new rule whereby 12(b)(6) adjudication sometimes constitutes "trial on the merits" such that remand is precluded by *Caterpillar* and *Grubbs*.  Given that the Supreme Court has expressly discouraged this court from creating new jurisdictional exceptions, and given that jurisdictional rules "of indeterminate scope" are disfavored, we decline the invitation.  *Id.* at 575, 582.  We therefore hold that because there has been no trial on the merits, any interest in economy or finality is not sufficient to override Camsoft's timely and meritorious challenge to removal.  Accordingly, the case must be remanded to the state of Louisiana.  Because the case should have been remanded for the reasons stated herein, we affirm the remand order in judgment only.  The court's discussion and reasoning are vacated.  *See In re Golden Rests., Inc.*, 402 F. App'x 5, 10 (5th Cir. 2010) (unpublished) ("The district court lacked jurisdiction to make any decisions beyond the remand . . . .").

## V.  Conclusion

This case should have been remanded upon Camsoft's timely motion following removal.  As explained herein, the patent laws could not provide a basis for removal because any inventorship allegation did not implicate a perfected patent or allege that such a patent existed.  Furthermore, our examination of the removed complaint reveals no alternate basis for removal,

No. 12-31013

and Appellants have identified no authority that precludes remand. Accordingly, as the district court had no jurisdiction to remove this case, the remand order is AFFIRMED as amended herein. The district court's other orders are vacated for lack of jurisdiction. Camsoft's motion to dismiss is DENIED, and its cross-appeal is DISMISSED as moot in light of the foregoing.